Argued and submitted January 21, affirmed September 18, reconsideration denied
December 13, 1985

## BUREAU OF LABOR AND
## INDUSTRIES et al,
*Respondents,*

*v.*

## CITY OF ROSEBURG,
*Petitioner.*

(05-82; CA A31292)

706 P2d 956

Elizabeth K. Reed, Roseburg City Attorney, argued the cause and filed the brief for petitioner.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent Bureau of Labor and Industries. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent Mobley.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

The City of Roseburg (city) petitions for review of an order of the Commissioner of the Bureau of Labor and Industries. She held that the city committed an unlawful employment practice by discriminating against complainant (Mobley) in compensation because of her sex. ORS 659.030(1)(b).[1]

The city assigns as errors that the Commissioner (1) allowed the Bureau to amend its charges to delete the words "substantially equal skill, effort and responsibility" and to substitute the words "of comparable character, the performance of which requires comparable skills"; (2) erroneously made ultimate findings of fact 7 and 8 that Mobley's job was "substantially similar" to those of three males that the city employed; (3) denied the city's motion to dismiss for failure to state a *prima facie* case; (4) concluded that the city discriminated against Mobley by paying her, because of her sex, a range of pay not commensurate with her work, in violation of ORS 659.030(1)(b); (5) concluded that the city did not rebut the inference of unlawful sex discrimination by articulating a legitimate reason for the discrepancy in pay; and (6) shifted the burden of persuasion to the city.

The Commissioner did not err when she allowed the Bureau to amend the charges. The original charges stated:

"The respondent has engaged in the following unlawful employment practices:

"1. The Complainant is a female.

"2. The Complainant is employed by the Respondent with the title of Transit Coordinator. She is the Division Head for the Transit Division of the Department of Public Works of the Respondent. She has been in this position or one with similar title and essentially identical responsibilities since February 1979.

"The Complainant's employment involves *substantially equal skill, effort, and responsibility* to that performed by

---

[1] ORS 659.030(1)(b) provides:

"[I]t is an unlawful employment practice:

"1. For an employer, because of any individual's * * * sex * * * to discriminate against such individual in compensation * * *."

other Division Heads and supervisors in the Department of Public Works and other of the Respondent's departments. All persons in those positions are male. *Her work is specifically comparable* to that of the Shop Superintendent, the Sewer Plant Superintendent, the Engineering Supervisor, and the Maintenance Superintendent and Foreman. The Complainant has been paid on pay ranges 8 and 11 during her employment as Transit Coordinator while the other comparable Division Heads and supervisors have been paid on pay range 14 and higher ranges. This is an unlawful employment practice under ORS 659.030." (Emphasis supplied.)

After both parties had presented their evidence, the Commissioner allowed the Bureau to amend the first sentence of the third paragraph of the charge to read:

"The Complainant's employment involves work of comparable character, the performance of which requires comparable skills to that performed by other division heads and supervisors of the Department of Public Works and others of the respondent's departments."

The amendment is based on the language of ORS 652.220(1) covering "work of comparable character."[2] In *City of Portland v. Bureau of Labor and Ind.,* 298 Or 104, 112, 115, 690 P2d 475 (1984), the court held that a charge in the words of that statute also charged discrimination in compensation under ORS 659.030(1)(b). The amended language, therefore, states a claim under ORS 659.030(1)(b). Furthermore, the original complaint alleged that Mobley's work was "comparable" to that of males who were paid more. The Commissioner has broad power to allow amendments to the charge. *See* OAR 839-04-030(3)(b). She did not err, therefore, in allowing the amendment.

■ The commissioner, moreover, decided the case under a standard of "substantially similar work" and not under either a standard of "substantially equal work" or of "comparable work." As she explained, this case is not properly

"denominated a case of unequal pay for comparable work, for the work for which a female employee is paid less than male employees is not just comparable, but substantially similar, to the work of those males; and that substantial similarity is but

---

[2] Work of "comparable character" is broader than "equal work." "Comparable" does not require equality but that two items have important common characteristics.

one of the elements which has led this forum to conclude that there has been unlawful discrimination in compensation herein." (Emphasis omitted.)

She accurately perceived that "substantially similar work" is a stricter test than "comparable work." Proof of a violation of the stricter "substantially similar" test necessarily proves a violation of ORS 659.030(1)(b). The city does not argue that there is a variance between the proof or the findings and either the original or the amended charge. It was not prejudiced by application of the stricter standard.

**5.** The Commissioner also did not err in making ultimate findings of fact 7 and 8 that Mobley's job was "substantially similar" to the jobs performed by three male public works department employes: the shop superintendent, the maintenance foreman and the water foreman. She determined that Mobley's position as transit coordinator was similar to those three jobs in the "nature and level of skills required and the equivalence of the combination of similar responsibilities they involve." The city does not challenge the Commissioner's other extensive findings of fact which underlie ultimate findings 7 and 8.[3] The Commissioner summarized those facts and explained her conclusion that Mobley's job was substantially similar to three other supervisory positions:

> "7) From February 1, 1979, to the present, at least three of the male Public Works Department administrators-supervisors (the Shop Superintendent, Maintenance Foreman and Water Foreman) have been performing work which was substantially similar to the work Complainant has been performing. By 'substantially similar,' this forum means that the positions chiefly involved equivalent combinations of substantially similar supervisory and administrative responsibilities and the substantially similar skills and efforts required to meet those responsibilities, and similar working condition. Specifically, they involved skills which could be gained on-the-job, while working up through the ranks over time. They required technical skills which were substantial. They involved equivalent combinations of substantially similar supervisory, long-range planning, budget-preparing and other administrative skills, efforts and responsibilities. The working conditions for each position involved difficulty.

---

[3] The Commissioner detailed the substantial similarities of Mobley's job and those of the shop superintendent, water foreman and maintenance foreman.

"8) Since February 1, 1979, Respondent has paid the Shop Superintendent at range 16 and the Maintenance and Water Foremen at range 15. The differences between these positions and Complainant's position do not explain or justify the fact that Respondent paid the Shop Superintendent and Maintenance and Water Foremen at seven to eight ranges above Complainant's range until July 1, 1981, and has paid them at four to five ranges above Complainant's range since then."

The city points to differences between Mobley's job and each of those three jobs but concedes that the similarities among them are substantial. The Commissioner properly concluded that the four jobs are substantially similar. Moreover, the Commissioner properly focused, not on the qualifications, background and experience of the persons who held the comparison jobs, but on a comparison of the jobs themselves. The Commissioner's ultimate findings of fact are supported both by substantial evidence and by substantial reason.

The Commissioner also did not err in concluding that the Bureau established a *prima facie* case that the city violated ORS 659.030(1)(b). It proved that Mobley performed work substantially similar to that performed by a male employe of the city. It also had the burden to prove that she received lower pay than the male employe and that the facts give rise to the permissible inference that the wage disparity was based on sex. *See City of Portland v. Bureau of Labor and Ind., supra,* 298 Or at 114. Mobley was paid less than the shop superintendent, maintenance foreman and water foreman for work on a substantially similar job. She was paid in the same range as the city's male greenskeeper, whose job the Commissioner found required substantially less supervisory and administrative responsibility.

Although more than one inference can be drawn from the same facts, the Commissioner may decide which inference to draw. *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981). As the court stated in *City of Portland v. Bureau of Labor and Ind., supra:*

"On judicial review under ORS 183.482(8)(c), a court can reverse the Commissioner only if the only reasonable deduction to be drawn from the evidence as a whole, including that presented by the City, is that the disparity in pay was other than 'because of' [complainant's] female sex. To put it another

way, if a reasonable person on the evidence in the record could draw the inference that the acknowledged disparity arose from compensating the female employe at a lower rate than the male employe 'because she is a female,' the Commissioner's decision on the facts must prevail, no matter what the court might believe from the evidence." 298 Or at 119.

Here, the city employed Mobley to work but did not pay her equally with males performing substantially similar work. The city's transportation committee, moreover, denied Mobley's request for a pay increase to range 14. The evidence shows that the transportation committee viewed complainant only as a secretary, despite an awareness of her responsibilities. The Commissioner's opinion states:

"Beyond showing a pay pattern aligned with gender (and not with work performed), the Agency's case in chief shows that even when Respondent's agent the Transportation Commision was told outright that [Mobley] was underpaid in comparison with certain male workers doing similar work, it rejected a proposal to raise [Mobley's] pay to range 14 because it felt her duties and responsibilities did not warrant that pay. Despite clear information to the contrary from the best source of information on [Mobley's] work and from its direct and full exposure to [Mobley's] work at its monthly meetings for two years, the Commission viewed [Mobley] as working in the role of secretary. (This finding is based upon the fact that the Commission viewed [Mobley] as its secretary; that its Chair, who played a key role in forming the Commission's judgments as to [Mobley's] work herein, viewed [Mobley] as an administrative secretary rather than as a division head; and that the Commission recommended that [Mobley's] pay be raised just to the range of the administrative secretary with whom its Chair equated [Mobley].) The Commission's conclusion that [Mobley's] role was secretarial was so blatantly wrong in fact and so contradicted the information the Commission had been given about [Mobley's] work that it logically cannot be based on [Mobley's] work. It logically can only be explained by, and therefore consciously or unconsciously must have been based upon, the fact that [Mobley] is a female. The Commission's perception that [Mobley] did secretarial work certainly must have (and should have) influenced the Commission to decide that [Mobley's] work did not merit range 14 pay. After all, Respondent does not pay at or near range 14 for secretarial work. In sum, in the absence of any other explanation for the Commission's conclusion that [Mobley's] work did not merit range 14 pay, this forum infers that it was based

upon the Commission's perception that since [Mobley] was a female, she worked in the traditionally female role of secretary."

The city also does not assign error to the official notice that the Commissioner took that

"[i]n the United States before and during times material herein, secretarial jobs have been predominantly held by women, and the performance of secretarial work has been viewed as a female role."

■ The Commissioner could conclude that the city paid Mobley at a range of pay not commensurate with her work *because of her sex*.[4] She drew a permissible inference when she stated that "this forum has inferred from the basic facts that it is more likely than not that respondent failed to pay complainant at all commensurate *[sic]* with her duties and responsibilities because of her sex." Accordingly, the bureau proved a *prima facie* case under ORS 659.030(1)(b).

■ The city's two remaining assignments of error are without merit. It asserts that the Commissioner erred because she did not find a nondiscriminatory reason for the pay disparity. It asserts affirmatively that the pay disparity between Mobley and the shop superintendent, water foreman and maintenance foreman was due not to sex but to the city's merit system, its job classification system and its economy measures.

The Commissioner rejected the merit system defense, stating that the merit system could account for the step, but not the range, at which the city paid Mobley. The city did not contest the Commissioner's finding that

"[Mobley's] initial salary was equivalent to step one in [the city's] salary range seven. During all times material herein, each of Respondent's job classifications was assigned to a

---

[4] The Commissioner noted that neither party disputed the conclusions of the Salik/Starostka study concerning the city's classification system that showed that the city was relatively underpaying 80% of its female employes and overpaying over a third of its male employes; and that in the Public Works Department the city underpaid 70% of its female employes and overpaid 71.15% of its male employes. The Commissioner was entitled to conclude that the city's own study, which showed a general pattern of underpaying women and overpaying men, bolstered the inference of sex-based discrimination in pay.

salary range consisting of six successively higher steps. Generally, the job performance of each of Respondent's employees was reviewed once each year, after the first year of employment, to determine whether that employee would receive a one-step 'merit' (i.e. based on job performance) increase."

The Commissioner reasoned from these facts that the city's merit system did not explain the wage disparity of three or more pay *ranges* between complainant's salary as transit coordinator and the salaries of the shop superintendent, water foreman and maintenance foreman. The city argues that in two instances it increased complainant's pay range. Those raises, however, did not result from the merit system. The Commissioner could conclude that the pay disparity did not result from application of the city's merit system.

■ The city also relied on a job classification system to explain the pay disparity. The Commissioner found that the classification system was not implemented at the time of the hearing in this case, and the city does not contest this finding. The job classification system, therefore, could not be the basis on which the city calculated salaries during the relevant period. The Commissioner was entitled to conclude that the city's job classification system did not overcome the inference of unlawful sex discrimination.

■ The city may not discriminate against employes in pay on the basis of sex because of a desire to economize. It cites no authority to support a "cost cutting" defense to a discrimination claim, and there is none. Moreover, the Commissioner was not obliged to believe the city's explanation that it refused to raise Mobley's salary to range 14 to cut costs. Anyway, she found as fact that that was not the actual reason, and the city does not challenge this finding as unsupported by substantial evidence.

Finally, the Commissioner did not erroneously place the burden of persuasion on the city. Rather, she explicitly recognized the Bureau's overall burden to prove unlawful discrimination.

Affirmed.