COLORADO CIVIL RIGHTS
COMMISSION, Petitioner
and Cross–Respondent,

and

Amy J. Budde, Complainant,

v.

The TRAVELERS INSURANCE COM-
PANY and Miles & McManus,
Respondents and Cross–Petitioners.

No. 86SC159.

Supreme Court of Colorado,
En Banc.

July 18, 1988.

Rehearing Denied Sept. 12, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Winters, First Asst. Atty. Gen., Denver, for petitioner and cross-respondent.

Rothgerber, Appel, Powers & Johnson, Michael D. Nosler, Laura A. Wing, Mark Spitalnik, Denver, for respondent and cross-petitioner The Travelers Ins. Co.

Miles & McManus, n/k/a Miles, McManus & Epstein, Richard G. McManus, Jr., Denver, pro se.

David H. Miller, Denver, for amicus curiae American Civil Liberties Union Foundation of Colorado.

Pamela A. Gagel, Denver, for amicus curiae Colorado Women's Bar Ass'n.

KIRSHBAUM, Justice.

In *Budde v. Travelers Insurance Company*, 719 P.2d 376 (Colo.App.1986), the Court of Appeals set aside an order of the Colorado Civil Rights Commission (the Commission) containing the conclusion that the employer and an insurer of Amy J. Budde had violated statutory and administrative prohibitions against discrimination on the basis of sex. Specifically, the Commission concluded that Miles & McManus, Budde's employer, violated section 24–34–402(1)(a), 10 C.R.S. (1982 & 1987 Supp.); section 80.8(b) of the Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1; and article II, section 29, of the Colorado Constitution (the Equal Rights Amendment) when it provided Budde a group insurance policy covering complications of pregnancy but excluding expenses incurred during a normal pregnancy and childbirth. The Commission also concluded that The Travelers Insurance Company (Travelers) violated section 24–34–402(1)(e), 10 C.R.S. (1982), by offering a group insurance policy with those coverage restrictions to Miles & McManus. The Court of Appeals concluded that Miles & McManus did not discriminate on the basis of sex when it provided such a health insurance policy as compensation to its employees. Having granted certiorari to review this conclusion, we reverse and remand with directions.

I

From early October of 1981 until March 8, 1982, Miles & McManus employed Budde as a secretary and provided a comprehensive group medical insurance policy underwritten by Travelers in conjunction with Budde's employment.[1] This insurance policy provided benefits for complications of

---

1. The record does not disclose whether the premiums for the insurance policy were paid entirely by Miles & McManus.

pregnancy, but excluded reimbursement of medical expenses resulting from normal pregnancy.[2] In late January or early February of 1982, Budde informed her employer that she was pregnant. On March 8, 1982, Budde's employment was terminated. She experienced a normal pregnancy and childbirth, and incurred medical expenses of $1,751.29. When Budde filed a claim with Travelers for reimbursement of these expenses, Travelers denied the claim on the basis that the costs of her normal pregnancy and childbirth were not covered by the employer's policy.

On March 10, 1982, Budde filed charges with the Commission alleging that the failure of Miles & McManus to provide an insurance policy affording benefits for normal pregnancy constituted discrimination and that Travelers aided and abetted in this allegedly discriminatory practice by issuing a policy lacking coverage for expenses incurred as a result of normal pregnancy. After investigating the charges, the Commission Director determined that there was probable cause to credit Budde's allegations of discriminatory practice.[3] The Commission subsequently filed complaints against Miles & McManus and Travelers, and the two actions were consolidated by the Commission hearing officer.

The Commission hearing officer granted a motion for summary judgment in support of the complaint. The hearing officer concluded that the insurance policy provided to Budde was discriminatory in nature in violation of section 24–34–402(1)(a), 10 C.R.S. (1982 & 1987 Supp.) (proscribing discrimination on the basis of sex in matters of compensation), and the Colorado Civil Rights Commission Sex Discrimination Rules, section 80.8(b), 3 C.C.R. 708–1 (re-

quiring that pregnancy or childbirth be treated by employer in same manner as other disabilities for purposes of accrual of benefits or payment of health or disability insurance). Also concluding that Travelers aided and abetted in the discriminatory employment practice, the hearing officer ordered Miles & McManus and Travelers to pay Budde the medical expenses she incurred as a result of her pregnancy and ordered Miles & McManus to adopt a benefits plan that provided coverage for normal pregnancy.

The Commission reviewed the decision of the hearing officer on its own motion and affirmed. The Commission adopted the hearing officer's findings and conclusions and, as an additional basis for its determination, observed that the Equal Rights Amendment, Colo. Const. art. II, § 29, required the conclusion that "all health insurance plans must treat pregnancy as [they] would any other sickness or disability." The Commission also concluded that although section 10–8–122, 4A C.R.S. (1987) (requiring that sickness and accident insurance policies provide coverage for a sickness, disease or accident which is a complication of pregnancy in the same manner as any other sickness, disease or accident is covered under the policy), established a minimum insurance coverage requirement, section 24–34–402 and the Equal Rights Amendment established an additional requirement. The Commission reasoned that Travelers could not disclaim responsibility for aiding and abetting a discriminatory employment practice under section 24–34–402(1)(e), 10 C.R.S. (1982), simply because it had offered Miles & McManus the option of selecting a policy providing comprehensive coverage for pregnancy.

Travelers also offered Miles & McManus the option of selecting a policy providing comprehensive coverage of expenses associated with a normal pregnancy.

---

**2.** The policy specifically provided that "[c]harges not covered" included "those ... resulting from pregnancy except Complications of Pregnancy." The policy defined "complications of pregnancy" in pertinent part as "[c]onditions requiring medical treatment prior or subsequent to termination of pregnancy whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy...." The parties do not suggest that expenses of childbirth are not expenses resulting from a normal pregnancy.

**3.** The Commission Director also determined that there was probable cause to credit Budde's allegation that she was discharged from her position because of her pregnancy. However, no complaint was filed respecting this allegation; such issue is not, therefore, before this court.

Both Miles & McManus and Travelers appealed the Commission's order. A divided panel of the Court of Appeals set aside the order, concluding that section 24-34-402 does not require that insurance benefits be provided for expenses incurred as the result of a normal pregnancy and that the Commission's interpretation of section 80.8(b) of the Commission Rules as requiring such benefits was inconsistent with section 24-34-402. The Court of Appeals majority also concluded that the Equal Rights Amendment does not proscribe exclusion of insurance benefits on the basis of a difference in gender.

## II

### A

■ The Commission urges that pursuant to the Equal Rights Amendment, Colo. Const. art. II, § 29, and section 24-34-402, 10 C.R.S. (1982 & 1987 Supp.), an employer discriminates on the basis of sex by providing employees as part of a total compensation package a group health insurance policy providing coverage only for complications of pregnancy and excluding from coverage expenses incurred during a normal pregnancy. We agree.

Section 24-34-402 provides in pertinent part as follows:

**Discriminatory and unfair employment practices.** (1) It shall be a discriminatory or unfair employment practice:

(a) For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against any person otherwise qualified because of handicap, race, creed, color, sex, age, national origin, or ancestry....

§ 24-34-402, 10 C.R.S. (1982 & 1987 Supp.).[4] This statutory language unambiguously proscribes discrimination in matters of compensation on the basis of sex; it is undisputed that the provision of group health insurance to Budde in conjunction with her employment constituted a matter of compensation.

The language employed in section 24-34-402 is similar to that found in Title VII of the Civil Rights Act of 1964, Pub.L. No. 88-352, 78 Stat. 253 (codified as amended at 42 U.S.C. § 2000e (1982)).[5] Although there are close parallels between section 24-34-402 and Title VII, Colorado's antidiscrimination legislation antedated the federal statute. *See* C.R.S.1953, §§ 81-19-1 to -8. The provision proscribing discrimination on the basis of sex in matters of employment was added to C.R.S.1963, section 80-21-6(2), the immediate predecessor to section 24-34-402, in 1969. *See* Act approved July 1, 1969, ch. 205, § 1, 1969 Colo.Sess.Laws 667.[6]

In concluding that the health insurance policy provided here did not violate section 24-34-402, the Court of Appeals majority relied upon the United States Supreme Court decision in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed. 2d 343 (1976), interpreting the provisions of Title VII. In *Gilbert*, the Supreme Court concluded that an employer did not violate the provisions of Title VII by providing its employees as part of a total compensation package a disability plan which provided weekly benefits to employees disabled by sickness or accident but which excluded from coverage disabilities arising from pregnancy. Observing that Title VII contained no definition of the term "discrimi-

---

4. Although subsequent to the time of the activities involved in this case § 24-34-402 was repealed and reenacted in amended form, the amendments do not address issues pertinent to this case. *See* Act approved May 8, 1986, ch. 179, § 4, 1986 Colo.Sess.Laws 930, 931.

5. Although Title VII of the Civil Rights Act of 1964 applies only to employers with 15 or more employees, 42 U.S.C. § 2000e(b) (1982), no such limitation is found in §§ 24-34-401 to -406.

6. In addition to Title VII, the state legislatures had before them for consideration in 1969 the

Model Anti-Discrimination Act, promulgated by the National Conference of Commissioners on Uniform State Laws in 1966 and also proscribing discrimination in employment on the basis of sex. *See* Committee of State Officials on Suggested State Legislation, Council of State Governments, *Suggested State Legislation* D-38 (1967). The parties agree that no legislative history exists respecting the origin of Colorado's statutory prohibition against discrimination on the basis of sex.

nation,"[7] the Court concluded by analogy to decisions construing the equal protection clause of the fourteenth amendment that by enacting Title VII Congress intended to require coverage of pregnancy benefits only in situations in which the exclusion of such benefits was a "subterfuge" designed to accomplish "an invidious discrimination against the members of one sex." *Id.* at 136, 97 S.Ct. at 408 (quoting *Geduldig v. Aiello,* 417 U.S. 484, 496–97, 94 S.Ct. 2485, 2492, 41 L.Ed.2d 256 (1974) (decided under equal protection grounds)). The Court further concluded that the disability benefits plan at issue did not constitute a mere pretext to effect an invidious discrimination against the members of one sex, because the plan did not divide potential recipients into groups strictly on the basis of gender but rather divided potential benefits recipients into the non-gender-based groups of pregnant women and non-pregnant persons. *Id.* 429 U.S. at 135, 97 S.Ct. at 407.

The *Gilbert* decision was in effect nullified by the 1978 Congressional enactment of the Pregnancy Discrimination Act, Pub. L. No. 95–555, 92 Stat. 2076 (codified as amended at 42 U.S.C. § 2000e (1982)). That statute amended the definitional section of Title VII by the addition of a provision stating that discrimination "because of sex" included discrimination on the basis of pregnancy, childbirth or related medical conditions and that women affected by such conditions must under benefits programs provided by employers be treated the same as those individuals not so affected. The Court of Appeals majority nonetheless applied the *Gilbert* rationale to conclude that exclusion of normal pregnancy benefits under an employment benefits plan does not violate Colorado statutory or constitutional provisions. The court relied on the fact that the General Assembly has not amended section 24–34–402 to include the language added to Title VII by the federal Pregnancy Discrimination Act.

A review of the legislative history of the Pregnancy Discrimination Act supports the conclusion that in amending Title VII in 1978 Congress did not intend to extend Title VII beyond those areas originally covered but rather sought only to clarify the original intent that Title VII proscribed the exclusion of pregnancy benefits in fringe benefit packages provided as employment compensation. *E.g.,* H.R.Rep. No. 95–948, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4749, 4751; S.Rep. No. 95–331, 95th Cong., 2d Sess. 3; *see also Newport News Shipbuilding & Dry Dock Co. v. Equal Employment Opportunity Comm'n,* 462 U.S. 669, 679, 103 S.Ct. 2622, 2628, 77 L.Ed.2d 89 (1983) ("Proponents of the [Pregnancy Discrimination Act] repeatedly emphasized that the Supreme Court had erroneously interpreted congressional intent and that amending legislation was necessary to reestablish the principles of Title VII law as they had been understood prior to the *Gilbert* decision."). To the extent that the provisions of section 24–34–402 may have been intended to parallel those of Title VII, it is reasonable to conclude that no post-*Gilbert* amendment to section 24–34–402 was necessary because according to Congress the 1978 amendments to Title VII did not alter the original intent of that statute to proscribe gender discrimination in employment compensation on the basis of pregnancy.

Prior to the Court of Appeals decision in this case, no Colorado appellate court had adopted the restrictive view of sex discrimination espoused in *Gilbert.* A majority of state courts have rejected the *Gilbert* rationale altogether in construing provisions of state statutes and city ordinances proscribing sex discrimination in employment matters, *e.g., Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d 862 (Iowa 1978) (construing provision of city ordinance similar to state antidiscrimination provision); *Massachusetts Elec. Co. v. Massachusetts Comm'n Against Dis-*

---

7. Title VII provided that it was an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individu-

al's race, color, religion, sex, or national origin." *General Elec. Co. v. Gilbert,* 429 U.S. 125, 133, 97 S.Ct. 401, 406, 50 L.Ed.2d 343 (1976) (quoting 42 U.S.C. § 2000e–2(a)(1)).

*crimination,* 375 Mass. 160, 375 N.E.2d 1192 (1978); *Minnesota Mining & Mfg. Co. v. State,* 289 N.W.2d 396 (Minn.1979), *appeal dismissed,* 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980); *Castellano v. Linden Bd. of Educ.,* 158 N.J.Super. 350, 386 A.2d 396 (1978), *rev'd in part on other grounds,* 79 N.J. 407, 400 A.2d 1182 (1979); *Brooklyn Union Gas Co. v. New York State Human Rights Appeal Bd.,* 41 N.Y. 2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976); *Kimberly-Clark Corp. v. Labor & Indus. Review Comm'n,* 95 Wis.2d 558, 291 N.W.2d 584 (Wis.1980). Similarly, in *Newport News Shipbuilding & Dry Dock v. Equal Employment Opportunity Commission,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983), the Supreme Court, also rejecting the standards enunciated in *Gilbert,* concluded that an employer discriminates in its employment practice when that practice results in treatment of a person " 'in a manner which but for that person's sex would be different.' " *Id.* at 683, 103 S.Ct. at 2631 (quoting *City of Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 711, 98 S.Ct. 1370, 1377, 55 L.Ed. 2d 657 (1978), which quoted Developments in the Law, *Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1170 (1971)). Thus, the restrictive formulation developed in *Gilbert* has been discredited as a standard for interpreting either state or federal antidiscrimination statutory provisions.

Reliance on the *Gilbert* rationale is particularly inappropriate as a means of interpreting the provisions of section 24–34–402 in light of the fact that Colorado constitutional provisions provide additional prohibitions against sex discrimination not present in the United States Constitution. In 1972, the people of Colorado adopted as a constitutional amendment article II, section 29 (the Equal Rights Amendment), which provides as follows:

> **Equality of the sexes.** Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex.

This constitutional provision prohibits unequal treatment based solely on circumstances of sex, *People v. Salinas,* 191 Colo. 171, 551 P.2d 703 (1976), and requires that legislative classifications based exclusively on sexual status receive the closest judicial scrutiny, *People v. Green,* 183 Colo. 25, 514 P.2d 769 (1973). The Equal Rights Amendment necessarily guides us in interpreting the requirements of section 24–34–402.

Central to the Court's conclusion in *Gilbert* is the reasoning that an employer who does not provide coverage for pregnancy expenses, but does provide comprehensive coverage of all male-specific disabilities, does not discriminate against women, because in such situation " '[t]here is no risk from which men are protected and women are not.' " *General Elec. Co. v. Gilbert,* 429 U.S. at 135, 97 S.Ct. at 408 (1976) (quoting *Geduldig v. Aiello,* 417 U.S. 484, 496–97, 94 S.Ct. 2485, 2492, 41 L.Ed.2d 256 (1974)). However, because pregnancy is a condition unique to women, an employer offers fewer benefits to female employees on the basis of sex when it fails to provide them insurance coverage for pregnancy while providing male employees comprehensive coverage for all conditions, including those conditions unique to men. This disparity in the provision of comprehensive insurance benefits as a part of employment compensation constitutes discriminatory conduct on the basis of sex, *see, e.g., Franklin Mfg. Co. v. Iowa Civil Rights Comm'n,* 270 N.W.2d 829 (Iowa 1978); *Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination,* 375 Mass. at 160, 375 N.E.2d at 1192; *Minnesota Mining & Mfg. Co. v. State,* 289 N.W. 2d at 396, *appeal dismissed,* 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980), and is essentially no different in effect than if the employer had provided female employees a lower wage on the basis of sex, *see, e.g., Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980).

The policy provided to Budde by Miles & McManus excluded coverage for pregnancy, well baby care and conditions caused by war or international armed conflict and placed some restrictions on benefits respecting treatment for mental illness or alcoholism. The pregnancy coverage ex-

clusion did not apply to the members of both sexes equally. The argument that such a plan did not discriminate because all pregnant people are treated alike is refuted by the plan's inherently discriminatory designation of the recipient class—the exclusion of all women from reimbursement for the costs of treatment of a physiological condition affecting only women. *E.g., Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d at 862. The failure to provide coverage for the treatment of pregnancy in an otherwise comprehensive insurance policy discriminates against women on the basis of sex as surely as, for example, the failure to provide coverage for the treatment of prostate conditions in a comprehensive policy would discriminate against men on the basis of sex.

Also underlying the *Gilbert* rationale is the conclusion that pregnancy should be treated differently from other disabilities because pregnancy is not typically classifiable as a "disease" and is often a voluntarily undertaken condition. *General Elec. Co. v. Gilbert,* 429 U.S. at 136, 97 S.Ct. at 408. Such conclusion ignores the fact that pregnancy is a natural incident of adult life requiring medical attention. *E.g., Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination,* 375 Mass. at 160, 375 N.E.2d at 1192. The failure to provide coverage for this medical condition, regardless of whether it may technically be classified as a disease, in an otherwise comprehensive insurance policy provided as compensation constitutes discrimination. The purpose of health insurance plans is to defray the costs of needed medical treatment. There is no basis other than sex discrimination to exclude the costs of normal pregnancy-related medical treatment from a comprehensive plan that provides coverage for the costs of other normal conditions.

The conclusion that pregnancy benefits need not be provided because pregnancy is a voluntary condition is similarly unpersuasive. *E.g., Franklin Mfg. Co. v. Iowa Civil Rights Comm'n,* 270 N.W.2d at 829; *Minnesota Mining & Mfg. Co. v. State,* 289 N.W.2d at 396, *appeal dismissed,* 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980). The policy provided to Budde did not exclude coverage for medical conditions incurred as the result of other voluntary activities, such as participating in sports activities or engaging in the consumption of tobacco products. Furthermore, some pregnancies may in fact result from nonvoluntary circumstances.

Miles & McManus asserts that any interpretation of section 24–34–402 requiring coverage of pregnancy benefits would essentially mandate greater benefits for female employees than for male employees and would, therefore, constitute discrimination against male employees. Although the risks of one class may not be precisely the same as the risks of the other class, an insurance policy which provides benefits comprehensively to males and females for medical conditions to which each class is separately subject cannot be deemed to discriminate against either class on the basis of sex. *E.g., Franklin Mfg. Co. v. Iowa Civil Rights Comm'n,* 270 N.W.2d at 829; *see also* § 80.2(c)(5), Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1 ("It shall not be a defense to a charge of sex discrimination in benefits that the cost of such benefits is greater with respect to one sex than the other."); *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (under Title VII, although females may receive greater retirement benefits due to their greater longevity, paying a retired female worker lower monthly benefits than a retired male worker who deferred the same amount of compensation constitutes discrimination); *City of Los Angeles Dep't of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (under Title VII, although females may receive greater retirement benefits due to their greater longevity, employer cannot demand greater retirement fund contributions from female workers than from male workers); *Bureau of Labor & Indus. v. City of Roseburg,* 75 Or.App. 306, 706 P.2d 956 (1985) (employer may not discriminate on the ba-

sis of sex merely because of a desire to economize), *review denied,* 300 Or. 545, 715 P.2d 92 (1986).

For the foregoing reasons, we conclude that Miles & McManus discriminated on the basis of sex, in violation of the requirements of the Equal Rights Amendment and section 24–34–402, by providing employees as part of a total compensation package a group health insurance policy which excluded from coverage medical expenses associated with normal pregnancy.

## B

 Both Miles & McManus and Travelers argue that section 80.8(b) of the Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1, has no applicability to the payment of medical expenses associated with normal pregnancy, but rather requires only that employees disabled due to pregnancy be paid income maintenance benefits in the same manner as employees disabled due to other reasons. We are not persuaded by this argument.

Section 80.8 provides in pertinent part as follows:

Section 80.8. Pregnancy and Childbirth:

. . . .

(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom, are for all job related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written or unwritten employment policies and prac-

tices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

§ 80.8(b), Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1. The argument that section 80.8(b) is inapplicable to the facts of this case is predicated upon an interpretation of section 80.8(b) that disabilities caused by pregnancy must be treated as other disabilities are treated, not that the condition of pregnancy itself must be treated as a disability. However, section 80.8(b) by its terms provides that employment "policies and practices involving ... payment under any health ... insurance ... plan" must be applied to disability due to pregnancy or childbirth "on the same terms and conditions" as those policies and practices are applied to other disabilities. The salient similarities between pregnancy and other medical disabilities include the potential for losing income due to temporary inability to perform job duties and the potential for incurring medical expenses. Section 80.8(b) on its face requires that medical expenses incurred as a result of pregnancy and childbirth be covered under a health insurance plan provided by the employer in the same manner as are medical expenses incurred as a result of other temporary disabilities.[8]

---

**8.** Terminology virtually identical to that of section 80.8(b) is also found in one of the guidelines on discrimination promulgated by the federal Equal Employment Opportunity Commission, 29 C.F.R. § 1604.10 (1987). Section 1604.-10(b) of the Equal Employment Opportunity Commission Guidelines on Discrimination Because of Sex provides in pertinent part as follows:

Disabilities caused or contributed to by pregnancy, childbirth, or related medical conditions, for all job-related purposes, shall be treated the same as disabilities caused or contributed to by other medical conditions, under any health or disability insurance or sick leave plan available in connection with em-

ployment. Written or unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied to other disabilities. . . .

The terminology employed in the federal guideline was based upon recommendations of the Citizens Advisory Council on the Status of Women and was intended to emphasize the similarities between pregnancy and other medical con-

The coverage of medical expenses under a comprehensive health insurance policy is, then, merely one aspect of treating pregnancy in the same manner as other medical disabilities.

We conclude that section 80.8(b) governs the circumstances of this case. We also conclude, contrary to the arguments of Miles & McManus and Travelers, that this rule properly effectuates the requirement of section 24–34–402, 10 C.R.S. (1982 & 1987 Supp.), that pregnancy be treated in the same manner as other medical conditions resulting in medical expenses.[9]

### C

Arguing that section 80.8(b) of the Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1, is void for vagueness, Miles & McManus asserts that the application of section 80.8(b) to require coverage of expenses associated with normal pregnancy violates its rights to due process of law under the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. We disagree.

▮▮▮ Statutes and administrative regulations are presumed valid, and the burden is upon the party attacking such provisions to establish their invalidity beyond a reasonable doubt. *E.g., Pigg v. State Dep't of Highways,* 746 P.2d 961 (Colo.1987); *People v. Riley,* 708 P.2d 1359 (Colo.1985). The guiding principle in a void for vagueness challenge is whether the terms of the statute or regulation are sufficiently specific to apprise persons of ordinary intelligence of the particular conduct that will subject them to liability. *E.g., Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed.2d 322 (1926); *People v. O'Cana,* 725 P.2d 1139 (Colo.1986); *People*

*v. Riley,* 708 P.2d at 1362. An interpretation of a statute by the executive agency charged with enforcement of the statute should be given deference by the courts. *E.g., Pigg v. State Dep't of Highways,* 746 P.2d at 961; *Colorado Ass'n of Public Employees v. Lamm,* 677 P.2d 1350 (Colo. 1984).

▮▮▮ The Commission declined to adopt the *Gilbert* rationale in interpreting the provisions of section 24–34–402, 10 C.R.S. (1982 & 1987 Supp.), and section 80.8(b). *See Red Seal Potato Chip Co. v. Colorado Civil Rights Comm'n,* 44 Colo.App. 381, 618 P.2d 697 (1980). Moreover, as we have noted, section 80.8(b) unequivocally applies by it terms to benefits provided under health insurance plans. We conclude, therefore, that Miles & McManus had sufficient notice of the fact that normal pregnancy benefits were mandated in health insurance plans provided employees as compensation.

### III

▮▮▮ The Commission argues that because Travelers offered an employer a discriminatory insurance policy, and underwrote such policy, it must be deemed to have violated section 24–34–402(1)(e), 10 C.R.S. (1982), proscribing the aiding and abetting of discrimination. We agree.

Section 24–34–402, 10 C.R.S. (1982), provides in pertinent part as follows:

**Discriminatory and unfair employment practices.** (1) It shall be a discriminatory or unfair employment practice:

. . . .

(e) For any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof to aid, abet, incite, compel, or coerce the doing of any act de-

---

ditions and to avoid the semantic confusion inherent in attempting to identify pregnancy as a sickness or an accident. *See* B. Babcock, A. Freedman, E. Norton & S. Ross, *Sex Discrimination and The Law—Causes and Remedies* 314 (1975).

**9.** Miles & McManus also argues that, because § 80.8(b) of the Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1, allegedly applies only to insurance coverage of

disability, the Commission's interpretation of § 80.8(b) as applying to health insurance benefits constitutes unlawful rule-making in violation of § 24–4–103, 10 C.R.S. (1982 & 1987 Supp.) (requiring notice and public hearing prior to rule adoption). Our conclusion that § 80.8(b) also applies by its terms to coverage of pregnancy benefits under health insurance plans disposes of this argument.

fined in this section to be a discriminatory or unfair employment practice, or to obstruct or prevent any person from complying with the provisions of this part 4 or any order issued with respect thereto, or to attempt, either directly or indirectly, to commit any act defined in this section to be a discriminatory or unfair employment practice....

It is undisputed that Travelers is a "person" within the meaning of section 24–34–402(1)(e). *See* § 24–34–301(5), 10 C.R.S. (1982). Travelers nonetheless asserts that it cannot be held liable for aiding and abetting discrimination pursuant to section 24–34–402 because pursuant to section 10–8–102, 4A C.R.S. (1987), the discriminatory insurance form provided to Budde had been approved by the Insurance Commissioner as complying with the requirements of law. Section 10–8–102, 4A C.R.S. (1987), provides in pertinent part as follows:

**Approval of policy forms.** (1) On and after January 1, 1952, no policy of sickness and accident insurance shall be delivered or issued for delivery in this state, nor shall any endorsement, rider, or application which becomes a part of any such policy be used, until a copy of the form and of the premium rates and of the classification of risks pertaining thereto are filed with the commissioner; nor shall any such policy, endorsement, rider, or application be so used until the expiration of thirty days after the form has been filed unless the commissioner shall sooner give his written approval thereto. The commissioner shall notify in writing the insurer which has filed any such form if it does not comply with the requirements of law or if it contains any provision which is deceptive, ambiguous, or misleading, specifying the reasons for his opinion; and it shall thereafter be unlawful for such insurer to use such form in this state. In all other cases the commissioner shall give his approval....

However, a Colorado Division of Insurance supervising analyst, deposed as the designated representative of the Insurance Commissioner, testified that a review under section 10–8–102 of whether an insurance policy form complied with the requirements of law was limited to a review of Title 10 statutes and the regulations promulgated pursuant to those statutes.

Travelers also denies liability on the basis that it complied with the provisions of the Colorado insurance statutes and the regulations of the Insurance Commissioner specifically pertaining to coverage for pregnancy benefits—section 10–8–122, 4A C.R.S. (1987), and Colorado Insurance Regulation 78–16, 3 C.C.R. 702–6. Section 10–8–122, 4A C.R.S. (1987), provides as follows:

**Complications of pregnancy and childbirth.** (1) Any sickness and accident insurance policy providing indemnity for disability due to sickness shall provide coverage for a sickness or disease which is a complication of pregnancy or childbirth in the same manner as any other similar sickness or disease is otherwise covered under the policy. Any sickness and accident insurance policy providing indemnity for disability due to accident shall provide coverage for an accident which occurs during the course of pregnancy or childbirth in the same manner as any other similar accident is covered under the policy.

(2) Any sickness and accident insurance policy providing coverage for sickness on an expense-incurred basis shall provide coverage for a sickness or disease which is a complication of pregnancy or childbirth in the same manner as any other similar sickness or disease is otherwise covered under the policy.

At the time the policy was offered to Miles & McManus, Colorado Insurance Regulation 78–16, 3 C.C.R. 702–6, provided in pertinent part as follows:

*Rule:*

All insurers marketing sickness and accident insurance within the State of Colorado shall employ in each insurance policy or certificate of insurance issued covering a resident of the State of Colorado a definition of the term "complications of pregnancy" no more restrictive than that which follows:

"Complications of pregnancy" means any disease, disorder or condition

whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy, and (1) require physician prescribed supervision; and (b) result in a loss or expense which would, if not related to pregnancy, be covered by the applicable indemnity or expense incurred provisions of the contract.

It is undisputed that Travelers complied with section 10–8–122 and Insurance Regulation 78–16 in underwriting the group insurance policy provided to Budde.[10]

Section 10–3–1104(1)(f)(III), 4A C.R.S. (1987), a provision prohibiting insurance companies from "making or permitting to be made any classification solely on the basis of marital status or sex, unless such classification is for the purpose of insuring family units or is justified by actuarial statistics," was enacted contemporaneously with section 10–8–122. *See* Act approved July 14, 1975, ch. 85, § 1, 1975 Colo.Sess. Laws 341. Travelers asserts that the contemporaneous enactment of section 10–3–1104(1)(f)(III) and section 10–8–122 indicates that the General Assembly concluded that the provision of an insurance policy covering only complications of pregnancy would not constitute a classification solely on the basis of sex. Observing that a review of the legislative history of section 10–8–122 indicates that the General Assembly considered including a mandatory maternity benefits provision in section 10–8–122, Travelers also asserts that the General Assembly never intended that the coverage of normal pregnancy expenses be mandated as part of group insurance plans provided as employment compensation. We do not find these arguments persuasive.

Section 10–8–122 was enacted subsequent to the enactment of section 24–34–402 and the promulgation of section 80.8(b), Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708–1. A presumption exists that the General Assembly enacts legislation with full knowledge of extant statutes. *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985); *City & County of Denver v. Rinker*, 148 Colo. 441, 366 P.2d 548 (1961); *see also* § 2–4–203(1), 1B C.R.S. (1980) (court may consider other statutory provisions, including laws upon a similar subject, as well as administrative construction of statutory provisions, as aids in construction). When determining the meaning of a particular statute, it is necessary to consider the relationship of that statute to other legislative provisions respecting similar subject matter, *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987), and statutes should be interpreted to harmonize with other potentially conflicting statutes, *People v. T.O.*, 696 P.2d 811 (Colo. 1985); *People In re D.L.E.*, 645 P.2d 271 (Colo.1982).

Applying these principles, it is reasonable to conclude that the General Assembly intended by the enactment of section 10–8–122 to address a problem independent of that previously addressed by section 24–34–402 and section 80.8(b). The latter two sections addressed the extent of insurance coverage necessary as a matter of equal treatment in matters of compensation in the employment sector. Section 10–8–122 by its terms addressed the minimum requirements of all sickness and accident insurance policies, whether issued as employment compensation or on the basis of an individual contract. In addition, the legislative history of section 10–8–122 indicates that the General Assembly was aware that some health insurance policies excluded from coverage any costs for complications

---

10. In August of 1982, subsequent to the activities involved in this case, an amendment to Insurance Regulation 78–16 was promulgated. The amendment stated in pertinent part as follows:

> NOTE: All insurers, nonprofit hospital and health service corporations under C.R.S.1973 10–16–101 et seq[.] as amended, and health maintenance organizations under C.R.S.1973 10–16–101 et seq. as amended, marketing group sickness and accident coverages within

the State of Colorado should be aware that both the Colorado Civil Rights Commission, pursuant to C.R.S.1973, 24–34–402(1)(a) and (3), as amended, and the Federal Equal Employment Opportunity Commission, in accordance with 42 U.S.C. 2000e(k), require that all such coverage provided to employees as an employment benefit treat a *normal* pregnancy the same as a sickness.

Colorado Insurance Regulation 78–16, 3 C.C.R. 702–6 (emphasis in original).

of pregnancy and intended by enacting section 10–8–122 to establish a minimum requirement that all health insurance policies provide coverage for the potentially catastrophic costs associated with treatment of complications of pregnancy. *E.g., Hearing on H.B. 1437 Before the Senate Comm. on Business Affairs & Labor,* 50th Gen. Assembly, 1st Reg.Sess. (May 20, 1975); *Hearing on H.B. 1437 Before the House Comm. on Health, Environment, Welfare & Institutions,* 50th Gen. Assembly, 1st Reg.Sess. (March 31, 1975). Although the General Assembly deleted from the proposed legislation a provision mandating that all health insurance policies must provide maternity benefits, in view of the legislative history as a whole, this isolated fact does not warrant the conclusion urged by Travelers that the General Assembly intended that benefits for normal pregnancy would never be required as a matter of equal compensation in employment. *E.g.,* Debate on House floor (June 13, 1975) (Representative Webb, a sponsor of H.B. 1437, observing that even with amendment the intent of the bill remained basically the same—to provide such coverage for complications of pregnancy as was not already provided by existing legislation).

Similarly, we conclude that Insurance Regulation 78–16 constitutes a regulation to effectuate a uniform definition of "complications of pregnancy" and thereby to ensure uniformity in the provision of benefits for medical complications arising out of pregnancy.[11] The regulation does not, as Travelers argues, establish the maximum obligations of an insurance company.

For the foregoing reasons, we cannot conclude that section 24–34–402 has no applicability to Travelers in the context of this case and that section 10–8–122 and Insurance Regulation 78–16 form the sole bases of insurance company responsibility. Moreover, we also conclude that Travelers cannot avoid responsibility for conduct aiding and abetting a discriminatory act on

the ground that it had no intent to discriminate.

Our Court of Appeals has consistently recognized that direct evidence of discriminatory intent is not invariably a prerequisite to establishing a violation of state statutory provisions proscribing discriminatory practices. *Saint Luke's Hosp. v. Colorado Civil Rights Comm'n,* 702 P.2d 758 (Colo. App.1985); *Texas Southland Corp. v. Hogue,* 30 Colo.App. 560, 497 P.2d 1275 (1972); *Colorado Civil Rights Comm'n v. State,* 30 Colo.App. 10, 488 P.2d 83 (1971). In interpreting the provisions of Title VII, the United States Supreme Court has reached similar conclusions respecting the provision of employee benefits by an employer, *Newport News Shipbuilding & Dry Dock Co. v. Equal Employment Opportunity Comm'n,* 462 U.S. 669, 682–83, 103 S.Ct. 2622, 2630–31, 77 L.Ed.2d 89 (1983) (employment practice is discriminatory when it results in treatment which would be different but for that person's sex); *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 1083, 103 S.Ct. 3492, 3498, 77 L.Ed.2d 1236 (1983) (same conclusion), and the application of an employer's discretionary hiring or promotion system, *Watson v. Fort Worth Bank & Trust,* — U.S. —, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (concluding that disparate impact analysis is applicable to subjective hiring and promotion decisions as well as to hiring and promotion decisions based on objective criteria).

The prohibition of section 24–34–402(1)(e), 10 C.R.S. (1982), against aiding and abetting discriminatory acts of others does not by its terms or its purpose require an intent to discriminate by the aider or abettor. The conduct proscribed is simply conduct that assists others in their performance of prohibited acts. *See Webster's Third New International Dictionary* 3, 44 (1976 ed.). Courts of other jurisdictions

---

11. Colorado Insurance Regulation 78–16, 3 C.C. R. 702–6, provides in pertinent part as follows:

*Purpose:*

 The purpose of this regulation is to standardize the definition of the term "complica-

tions of pregnancy" as employed in sickness and accident insurance policies covering residents of this state consistent with the commonly perceived connotation of this term by the general public.

interpreting aiding and abetting provisions of antidiscrimination statutes and ordinances proscribing discriminatory employment advertisements also have reached this conclusion. In the absence of direct evidence of discriminatory intent on the part of newspaper publishers, courts have uniformly held publishers liable for aiding and abetting discrimination by publishing discriminatory advertisements placed by employers or by arranging employment advertisements in sex-designated columns. *E.g., Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (publisher liable for aiding a discriminatory employment practice in violation of city antidiscrimination ordinance by placing want ads for employment in sex-designated columns); *Evening Sentinel v. National Org. for Women,* 168 Conn. 26, 357 A.2d 498 (1975) (reaching same conclusion under state antidiscrimination statute); *Passaic Daily News v. Blair,* 63 N.J. 474, 308 A.2d 649 (1973) (reaching same conclusion under state antidiscrimination statute); *State Div. of Human Rights v. Binghamton Press Co.,* 67 A.D.2d 231, 415 N.Y.S.2d 523 (1979) (publisher liable for aiding and abetting a discriminatory employment practice in violation of state antidiscrimination statute when the content of a published advertisement is discriminatory). As is the case with those statutes in other jurisdictions proscribing discriminatory advertising, the language of section 24–34–402 does not contain any requirement of an intent to discriminate as an element of the proscribed conduct. *See, e.g., Evening Sentinel v. National Org. for Women,* 168 Conn. at 26, 357 A.2d at 498.

Section 24–34–402(1)(e) seeks not only to eliminate the discriminatory practice of unequally compensating employees on the basis of sex but, by providing that persons who assist such discrimination commit independent discriminatory acts, also seeks to eliminate all practices leading to and facilitating discriminatory compensation. *See id.* The prohibition against aiding and abetting discriminatory acts of others reflects a reasoned legislative determination to further public policy proscribing sex dis-

crimination in employment by simultaneously attacking the evils of such discrimination on several fronts. Moreover, a causal relationship often exists between practices of aiding and abetting and the fostering of sex discrimination in employment. For example, in this case the provision of the insurance policy to an employee is inherently an integrated transaction; the insurance company's conduct in underwriting such an inherently discriminatory policy played a prominent role in the employer's unlawful act. *See, e.g., Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. at 388, 93 S.Ct. at 2560 (noting the integrated nature of the content of an employment advertisement and the placement of that advertisement in a sex-designated column); *Evening Sentinel v. National Org. for Women,* 168 Conn. at 26, 357 A.2d at 498 (concluding that a publisher facilitates discrimination by placing employment advertisement in a sex-designated column); *Passaic Daily News v. Blair,* 63 N.J. at 474, 308 A.2d at 649 (noting the prominent role of the publisher in fostering sex discrimination in advertising).

When the conduct being assisted is patently discriminatory, one need not have an intent to discriminate to be considered an aider or abettor. *See, e.g., Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. at 376, 93 S.Ct. at 2553; *Evening Sentinel v. National Org. for Women,* 168 Conn. at 26, 357 A.2d at 498; *Passaic Daily News v. Blair,* 63 N.J. at 474, 308 A.2d at 649; *State Div. of Human Rights v. Binghamton Press Co.,* 67 A.D.2d at 231, 415 N.Y.S.2d at 523. Here, the only basis for providing an employee with a comprehensive health insurance policy which excluded costs resulting from normal pregnancy was discrimination against female employees. Travelers knew the contents of its policy and knew that the provision excluding costs resulting from normal pregnancies applied only to female employees. That knowledge is sufficient to satisfy any mental state requirement of the statute. Furthermore, Travelers was apprised by section 80.8(b) of the Commis-

sion Rules of the discriminatory nature of the underlying employer-employee transaction. The mere fact that Travelers satisfied the statutory requirements of Title 10 provisions and relied upon the Insurance Commissioner's approval of its policy form cannot insulate Travelers from meeting its responsibilities imposed by other statutory and constitutional provisions.[12] Any contrary conclusion would contravene both the letter and spirit of section 24-34-402.

We conclude that Travelers aided and abetted a discriminatory practice in violation of section 24-34-402(1)(e) by offering a discriminatory insurance policy to Miles & McManus and underwriting such policy.

## IV

■ Both Travelers and Miles & McManus argue that the Commission exceeded its jurisdiction in requiring that Budde be reimbursed for medical expenses incident to a normal pregnancy. We disagree.

In *World Wide Construction Services, Inc. v. Chapman*, 683 P.2d 1198 (Colo. 1984), this court held that the Commission may only provide remedies authorized by the Commission's enabling statute. Section 24-34-306(9), 10 C.R.S. (1982), of the enabling statute provides as follows:

If, upon all the evidence at a hearing, there is a statement of findings and conclusions in accordance with section 24-4-105, together with a statement of reasons for such conclusions, showing that a respondent has engaged in or is engag-

ing in any discriminatory or unfair practice as defined in parts 4 to 7 of this article, the commission shall issue and cause to be served upon the respondent an order requiring such respondent to cease and desist from such discriminatory or unfair practice and to take such action as it may order in accordance with the provisions of parts 4 to 7 of this article.

The specific provision addressing relief for discriminatory and unfair employment practices, section 24-34-405, 10 C.R.S. (1982), found at part 4 of article 34, provides as follows:

**Relief authorized.** In addition to the relief authorized by section 24-34-306(9), the commission may order a respondent who has been found to have engaged in an unfair or discriminatory employment practice to take affirmative action regarding hiring, reinstatement, or upgrading of employees, without or without back pay, the referring of applicants for employment by any respondent employment agency, the restoration to membership by any respondent labor organization, the admission to or continuation in enrollment in an apprenticeship program, on-the-job training program, or a vocational school, the posting of notices, and the making of reports as to the manner of compliance.

Miles & McManus relies upon this court's decision in *World Wide Construction Services, Inc. v. Chapman*, 683 P.2d at 1198, for the conclusion that reimbursement of

---

12. Travelers seeks support for its position in the decisions of lower federal courts construing the liability of insurance companies under Title VII provisions. However, as Travelers concedes, the United States Supreme Court has recognized that Title VII primarily governs relations between employers and employees and has no direct application to third parties. *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 1086, 103 S.Ct. 3492, 3500, 77 L.Ed.2d 1236 (1983) (citing *City of Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)).

Travelers also argues that the application of § 80.8(b) of the Commission Rules and § 24-34-402 to an insurance company under the circumstances presented by this case would constitute a denial of rights to due process of

law. Specifically, Travelers notes that in *Valencia v. Mutual Benefit Life*, Colorado Civil Rights Comm'n No. E84DR023 (1984), the Commission Director issued a finding of no probable cause concluding in part that there was no evidence that an insurance company "consciously conspired" with a charging party's employer to deny the charging party insurance benefits covering the expenses of normal pregnancy. We conclude that Travelers could not have relied upon this decision, rendered after Travelers had issued the policy pertinent to this case. However, we also must disapprove the conclusion that an insurance company may be held liable for aiding and abetting under section 24-34-402(1)(e) only upon a showing of conscious conspiracy directed toward a particular employee. As we have noted, section 24-34-402(1)(e) contains no such requirement.

Budde's medical expenses exceeds the scope of the Commission's jurisdiction under its enabling statute. In *Chapman,* the complainant filed a charge with the Commission alleging that she had been discriminatorily discharged from her employment because of her sex. Although the complainant requested an award of back pay, she did not seek reinstatement. This court concluded that section 24–34–405 does not authorize an award of back pay independent of an order requiring reinstatement of the employee. Miles & McManus asserts that *Chapman* requires the conclusion that absent a finding that Budde's employment was discriminatorily terminated the Commission lacks authority to award Budde any reimbursement. *Chapman,* however, dealt solely with the issue of alleged discriminatory discharge. The issue here is one of alleged discriminatory compensation. This distinction renders the authority of *Chapman* inapplicable to the circumstances of this case.

Statutes should be construed to give effect to each provision in the statutory scheme. *E.g., Martinez v. Continental Enters.,* 730 P.2d 308 (Colo.1986); *Colorado General Assembly v. Lamm,* 700 P.2d 508 (Colo.1985). There is a presumption that a just and reasonable result is intended in the enactment of a statute, and a construction that leads to an unreasonable result will not be followed. *E.g., Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985); *U.M. v. District Court,* 631 P.2d 165 (Colo.1981).

As this court has recognized, the provision in section 24–34–405 authorizing an award of back pay to a complainant is an integral, incidental part of the equitable remedy provided by the statute. *Continental Title Co. v. District Court,* 645 P.2d 1310 (Colo.1982) (holding that the provision for award of back pay in section 24–34–405 does not provide a basis for requiring a jury trial under C.R.C.P. 38(a)). To interpret section 24–34–405 to require a complainant to seek reinstatement as a precondition to reimbursement of discriminatorily withheld compensation would unduly frustrate the objective of section 24–34–402(1)(a), 10 C.R.S. (1982 & 1987 Supp.), to proscribe discrimination in matters of employment compensation. In those cases wherein the employee has not been discharged, or no allegation of discriminatory discharge has been made, a requirement that a complainant seek reinstatement would obviate the incentive to victims of discrimination to file complaints. Indeed, an employer would be insulated from any monetary liability for discriminatory conduct in compensating its employees so long as the employees could not prove an additional discriminatory act in terminating employment. A more reasonable interpretation of section 24–34–405, and one which effectuates the proscriptions of section 24–34–402(1)(a), is that the Commission may order as affirmative action that the employer cease and desist from its discriminatory conduct, and, in conjunction with such affirmative action, an award of medical expenses associated with pregnancy may be ordered as back pay. *See Equal Employment Opportunity Comm'n v. Emerson Elec. Co.,* 39 Fair Empl.Prac.Cas. (BNA) 1569 (E.D.Mo. Jan. 13, 1986) [available on WESTLAW, 1986 WL 5146] (under Title VII, employees entitled to recover pregnancy-related expenses which should have been covered by employer's health insurance plan); *see also Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546 (11th Cir.) (under Title VII, calculation of back pay award should include fringe benefits), *cert. denied,* —— U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Sennello v. Reserve Life Ins. Co.,* 667 F.Supp. 1498 (S.D.Fla. 1987) (under Title VII, fringe benefits such as profit sharing, retirement contributions and health insurance coverage should be included in calculation of back pay award).

Miles & McManus asserts that Budde should receive no reimbursement because Budde's insurance coverage ceased at the time her employment was terminated and, therefore, a finding of unlawful termination is a prerequisite to an award of reimbursement. However, a review of the insurance policy provided Budde indicates that had Miles & McManus chosen to include pregnancy benefits within the policy those benefits would have been extended after termination of employment and would

have applied "to a pregnancy which exist[ed] at the date of termination, as evidenced by a written statement from the attending physician." Had the conduct of Miles & McManus not violated section 24–34–402, Budde would have received as employment compensation the sum which the Commission ordered she be paid. Under these circumstances, we conclude that the Commission did not exceed its jurisdiction by requiring reimbursement of pregnancy expenses. *See Colorado Civil Rights Comm'n v. ConAgra Flour Milling Co.*, 736 P.2d 842 (Colo.App.1987) (under discretion granted by § 24–34–405, Commission may award amount of back pay complainant would have received in absence of discriminatory conduct); *see also Equal Employment Opportunity Comm'n v. Emerson Elec. Co.*, 39 Fair Empl.Prac.Cas. (BNA) 1569 (E.D.Mo. Jan. 13, 1986) (employees entitled to recover pregnancy-related expenses not covered by insurance policy provided by employer).

## V

The judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals with directions to reinstate the Commission's order.