# United States Court of Appeals

## For the First Circuit

---

No. 01-2354

JOANN GU and CAROL SANTORO,

Plaintiffs, Appellants,

v.

BOSTON POLICE DEPARTMENT and DONALD MCGOUGH,
individually and in his official capacity as DIRECTOR OF THE
OFFICE OF RESEARCH AND EVALUATION OF THE
BOSTON POLICE DEPARTMENT,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

---

Before

Torruella, Greenberg,[*] and Howard,
Circuit Judges.

---

Shannon Liss-Riordan, with whom Harold L. Lichten and Pyle,
Rome, Lichten & Ehrenberg, P.C. were on brief, for appellants.
William V. Hoch, Staff Attorney, Office of the Legal Advisor,
Boston Police Department, for appellees.

---

December 2, 2002

---

[*] Of the Third Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-appellants, Joann Gu and Carol Santoro, appeal from a grant of summary judgment for defendants-appellees, the Boston Police Department and Donald McGough.  Plaintiffs first contend that defendants discriminated on the basis of sex by failing to promote either plaintiff to the position of Deputy Director of the Office of Research and Evaluation.  Second, plaintiffs allege that they are victims of unlawful retaliation by defendants.  Both claims purport violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e - 2000e-17, and Massachusetts General Laws chapter 151B, § 4(1).  Finally, plaintiffs assert that they were paid less than men performing comparable work, in violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d), and the Massachusetts Equal Pay Act, Mass. Gen. L. ch. 149, § 105A.  Upon defendants' motion for summary judgment, the district court found no material facts in dispute and, thereafter, ruled in defendants' favor as a matter of law.  After careful review, we affirm.

## I.

Plaintiffs both work in the Office of Research and Evaluation ("ORE") for defendant Boston Police Department ("the Department").  Gu has held the position of Senior Research Analyst[1]

---

[1]  ORE employees generally give themselves working titles which more accurately describe their positions than the generic titles associated with their pay grades.  We use those working titles here.

since 1997, and Santoro, currently a Senior Crime Analyst, has worked at ORE since 1994. Both plaintiffs' positions place them within the MM-6 salary grade (Gu at step 7; Santoro at step 4).[2]

Defendant McGough is the current Director of ORE, a position he assumed in December 1998 after the prior director, Luis García, stepped down. Previously, McGough was the Deputy Director, a title typically assigned to the employee with the second-highest rank, and thus the most seniority, after the Director.

Shortly before McGough became Director, ORE received funding for a new MM-8 position. This position offered a much higher salary range than either of plaintiffs' jobs. Because of the higher grade, the new MM-8 employee would also sit higher in the office hierarchy. While García obtained the funding for this new position, it was McGough who ultimately created the job description and filled the position. McGough submitted this job description for the Department's approval in November 1998, and the posting focused on advanced technical skills, specifically training and experience in Geographic Information Systems ("GIS"). The Department gave its approval to the description in February 1999, and the posting officially appeared on March 2, 1999.

Plaintiffs both applied for the new position, after being encouraged by McGough. However, it was clear from the outset that

---

[2]  The pay schedule ranges from MM-3 (lowest grade) to MM-14 (highest grade), and each grade has 9 steps.

Gu did not meet the basic requirements of the posting because she had very limited experience with GIS. Specifically, the posting required four years of experience with GIS, and Gu only had two days of training. Santoro also failed to meet this requirement, having only two years experience with GIS. Despite the disparity between plaintiffs' qualifications and the requirements of the job posting, both plaintiffs received interviews. Ultimately, neither was hired.

Another Department employee, Jeremy Cox, applied and interviewed for the MM-8 position. At the time, Cox worked as an MM-6 step 9 employee, but not in ORE. Cox did have significant GIS experience, and McGough originally expressed interest in filling the MM-8 position with Cox. However, Cox did not receive the job either. Later, he transferred to ORE as an MM-6 step 9 employee.

The position was ultimately filled by Carl Walter, who was working for the Charlotte-Mecklenburg Police Department at the time that he applied. Walter clearly met all the required qualifications and many of the preferred qualifications listed on the MM-8 job posting -- a factor that set him apart from the plaintiffs and Cox. There was, however, some controversy regarding Walter's application because it was dated February 27, 1999, before the date of the official posting. Plaintiffs neither saw the job posting nor applied before its official posting on March 2, and

defendants offer no explanation as to why Walter received the posting and applied early.

Upon selecting Walter for the MM-8 position, the Department also offered Walter the title of Deputy Director, ostensibly to make the offer more attractive and because, if hired, Walter would be the second-highest ranking employee in ORE (excluding ex-Director García who did not seek managerial responsibilities). It is undisputed that the Deputy Director, when there is one, has always been the second-highest ranking employee in ORE, after the Director. Plaintiffs further contend that the position of Deputy Director has always been filled from within by someone familiar with the office. However, it is also undisputed that the Deputy Director receives no added compensation, only added responsibilities.

Since McGough became Director in 1998, he has restructured ORE in various ways. ORE is generally divided into two teams: the research team and the crime analysis team. McGough has de-emphasized research, decreasing the number of employees in that area. Correspondingly, Gu has fewer employees working under her on research projects. The crime analysis team has also experienced changes, with several people being promoted to the level of Senior Crime Analyst and redistributions of responsibilities among Santoro and these new Senior Crime Analysts. Instead of being responsible for the entire City of Boston, Santoro

now only works with statistics from one area of the city. Also, McGough has instituted several new checks on management: requiring two people to sit in on interviews, personally reviewing all hiring decisions, and limiting the use of overtime hours.

Following the hiring of Walter and restructuring of ORE, the plaintiffs filed their complaint alleging sex discrimination, violations of the Federal and Massachusetts Equal Pay acts, and retaliation. Following discovery, the district court granted summary judgment in favor of the defendants on all claims. This appeal followed in a timely fashion.

## II.

We review grants of summary judgment de novo, viewing the facts in the light most favorable to the plaintiffs. Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002). If no genuine dispute of material fact exists, we will affirm. Fed. R. Civ. P. 56.

## III.

Plaintiffs challenge the grant of summary judgment as to each of their claims: (1) sex discrimination, (2) retaliation, and (3) violation of the equal pay acts. Because we find that there is no dispute of material fact, we affirm.

## A. Sex discrimination

The gravamen of plaintiffs' sex discrimination complaint is that they were passed up for a promotion to Deputy Director of

ORE because they are women. They claim that one of them was entitled to this position since, at the time that McGough became Director, they were the most senior employees in ORE. Rather than appoint one of the plaintiffs to this position, they allege that McGough went outside the Department to find a Deputy Director. This new Deputy Director, Walter, has no direct supervisory experience or familiarity with the Department or ORE. The only reason that McGough hired Walter and ignored them, plaintiffs claim, is because they are women, and McGough was opposed to having a woman in a position of authority.

An initial problem presents itself with plaintiffs' argument; they conflate the MM-8 position with the Deputy Director position. The fact that two separate jobs are involved creates a problem because it is undisputed that the MM-8 and Deputy Director positions, while eventually combined, entail different responsibilities and require different experience from applicants. The MM-8 position, as created by McGough, requires GIS expertise and offers a higher salary than that received by plaintiffs. The Deputy Director position involves additional managerial responsibilities but does not confer a salary increase. Since the Deputy Director has managerial responsibilities, familiarity with ORE and managerial experience can be seen as appropriate qualifications. At various times, plaintiffs equate the qualifications needed by the Deputy Director to those required in

the MM-8 position, but it is clear that these are two separate positions with separate responsibilities. Therefore, we will tease out the arguments and facts pertaining to the different positions.

Turning to the substantive merits of plaintiffs' case, the familiar McDonnell Douglas burden-shifting framework applies to both the federal and state claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); McKenzie v. Brigham & Women's Hosp., 541 N.E.2d 325, 326-27 (Mass. 1989) (applying McDonnell Douglas framework to analysis of discrimination claim under Mass. Gen. Laws ch. 151B). Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Once the plaintiff makes out a prima facie case, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. Id. If the defendant provides such a legitimate explanation, the plaintiff then has an opportunity to demonstrate that the proffered reason is pretextual. Id. at 804. At all times, the plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

To survive summary judgment and establish a prima facie case in a failure to hire case, plaintiffs must produce evidence on four points: (1) they are members of a protected class; (2) they applied for an open position; (3) they were not selected; and (4)

their employer filled the position by hiring another individual with similar qualifications. <u>Feliciano de la Cruz</u> v. <u>El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000); <u>Wynn & Wynn P.C.</u> v. <u>Mass. Comm'n Against Discrimination</u>, 729 N.E.2d 1068, 1078 n.22 (Mass. 2000). With regard to both contested positions, plaintiffs have adduced sufficient evidence of the first three criteria: (1) they are women; (2) they applied for or expressed interest in the positions;[3] and (3) they did not receive either job. However, the fourth prong of plaintiffs' prima facie case requires more analysis.

Walter, who received both the MM-8 and Deputy Director positions, has significantly different qualifications than either plaintiff. With regard to the MM-8 position, Gu admitted in her deposition that she was not qualified for the job because she did not meet the requirements specified in the job posting. Santoro, while having some GIS experience, also clearly did not meet the required qualifications. She only had two years of experience, and the posting specified four years of experience as a minimum requirement. It is undisputed that Walter met all of the required

---

[3] We note that the Deputy Director position was not one for which plaintiffs could apply. No official application is made; the Director simply appoints someone. However, plaintiffs introduced evidence that they expressed interest in the position. Viewing that evidence in the light most favorable to plaintiffs, we find this sufficient to satisfy their burden on this point.

qualifications and most of the preferred qualifications listed on the MM-8 posting.

With regard to the Deputy Director title, the evidence is more disputed. Gu and Santoro introduced evidence that all previous Deputy Directors had prior experience in ORE, while the defendants offered evidence that the only relevant job qualification was seniority, measured by both rank and time of employment. It is undisputed that Gu and Santoro had significant work experience and some managerial experience in ORE. Employing an extremely deferential standard, we find that Gu and Santoro met their minimal prima facie burden.

The burden then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for hiring Walter instead of either of the plaintiffs. <u>Feliciano de la Cruz</u>, 218 F.3d at 5; <u>Blare</u> v. <u>Husky Injection Molding Sys. Boston, Inc.</u>, 646 N.E.2d 111, 115 (Mass. 1995). Defendants assert that they hired Walter for the MM-8 position because he was the only candidate that met all of the required and most of the preferred qualifications. Furthermore, defendants assert that Walter was given the title of Deputy Director because he was the most senior employee in ORE at the time that he was appointed. In other words, defendants claim simply that they hired the most qualified and appropriate person for the jobs in question. The Department has met the burden of providing a legitimate explanation for its actions. <u>Woods</u> v. <u>Friction</u>

-10-

<u>Materials, Inc.</u>, 30 F.3d 255, 261-62 (1st Cir. 1994) (accepting legitimacy of hiring applicants because they were better qualified than plaintiff).

Because defendants have advanced a legitimate nondiscriminatory rationale for hiring Walter, the burden then returns to plaintiffs, who must now advance some evidence that the reason one of the plaintiffs was not hired was unlawful sex discrimination. <u>See</u> <u>St. Mary's Honor Ctr.</u> v. <u>Hicks</u>, 509 U.S. 502, 507-08 (1993); <u>see also</u> <u>Abramian</u> v. <u>President & Fellows of Harvard Coll.</u>, 731 N.E.2d 1075, 1085 (Mass. 2000). Plaintiffs claim they have satisfied this burden by arguing that McGough (1) tailored the MM-8 job posting so as to exclude plaintiffs from that position and (2) purposely delayed appointing a Deputy Director so as to avoid having to name one of the plaintiffs. In other words, plaintiffs assert that the Department's legitimate nondiscriminatory reasons are simply pretextual, disguising the sex-based discriminatory animus against plaintiffs.

In support of their argument that McGough tailored the MM-8 posting to exclude them, plaintiffs point to three facts: (1) McGough wrote the posting; (2) García expressed surprise at the posting's emphasis on mapping; and (3) Walter received the posting and submitted his application in advance of the official release date of the posting. Certainly, if the Department and McGough tailored the job qualifications to exclude women, this would be

-11-

unlawful sex discrimination.  Edwards v. Occidental Chem. Corp.,
892 F.2d 1442 (9th Cir. 1990).[4]  The MM-8 position is indisputably
a new position.  Further, there is abundant evidence that the
Department frequently hired outsiders to high-level positions in
ORE.  In fact, Gu herself entered as a MM-6 level employee from
outside the Department.  As to García's surprise at the position
requirements, the evidence advanced by plaintiffs demonstrates, at
most, that García and McGough had differing views as to the proper
direction of ORE.  Finally, the undisputed evidence shows that the
posting was created before McGough ever met Walter, excluding the
possibility that the posting was tailored to Walter's
qualifications.  Cf. Rossy v. Roche Prods. Inc., 880 F.2d 621, 626
(1st Cir. 1989) (reversing a grant of summary judgment when
plaintiff presented evidence that an old job description was
changed after two potential candidates were identified to
accommodate the male candidate's qualifications).  While plaintiffs
may disagree with the direction that McGough has chosen for ORE,
this is not a question that is properly the subject of litigation.
Id. at 625 ("Our role is not to second-guess the business decisions
of an employer, imposing our subjective judgments of which person

---

[4]  In Edwards, an employer changed a job description and filled
that position with someone outside the department for the first
time in fifty years after the first woman became eligible for the
promotion.  892 F.2d at 1447.  The court found that these facts
provided sufficient evidence for a jury to find that the employer
had unlawfully tailored the job requirements to exclude women.  Id.
at 1448.

would best fulfill the responsibilities of a certain job."). On this record, plaintiffs simply do not raise any question that the MM-8 posting was tailored to exclude them, or women generally.

Regarding Walter's appointment to the position of Deputy Director, plaintiffs attempt to undermine the Department's argument by showing that all prior Deputy Directors had previously worked in ORE. A departure from prior practice can indeed be probative of discriminatory intent, see Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982), but the evidence here does not show that there was any departure from prior practice. While all prior deputies were prior employees of ORE, the undisputed evidence also shows that the Deputy Director title is a recent creation. It has been the practice in the past for individual Directors to choose whether they wanted to name a deputy. The evidence clearly shows that all Deputy Directors have been the second-highest ranking employees of ORE. It is undisputed that Walter is the second-highest ranking employee of ORE, sitting two pay grades ahead of both plaintiffs. In fact, the evidence presented leads to only one conclusion, that McGough knew that he would be filling the MM-8 position, either with an insider or outsider, and that he decided to wait to appoint a Deputy Director until filling the MM-8 position. Making a decision to wait was neither inconsistent with prior practice nor evidence of discriminatory animus. Furthermore, it was consistent with prior practice to name the second-highest ranking employee as

Deputy Director. In fact, the inconsistent action would have been to name either of the plaintiffs as Deputy Director since they both occupied positions below Walter in the ORE hierarchy.

Plaintiffs try one last tack to undermine the Department's articulated nondiscriminatory rationale. They point to the deposition testimony of their co-worker Marjorie Bernadeau who complained generally about McGough's treatment of women in ORE. She testified that McGough was not comfortable with women being in charge, gave women more menial tasks and low level assignments, and reprimanded female employees for taking extended breaks but did not similarly reprimand the males. Viewing this evidence in the light most favorable to plaintiffs, it raises the possibility that McGough treats women differently. However, it does nothing to rebut the facts that (1) neither plaintiff met the basic requirements for the MM-8 position; (2) Walter met the job requirements for that same position; and (3) McGough simply followed office tradition in naming the second-highest ranking employee as Deputy Director. In the face of that overwhelming and unrebutted evidence, plaintiffs simply cannot sustain a claim for sex discrimination in the filling of either the MM-8 or Deputy Director positions. Therefore, the district court correctly granted summary judgment to the defendants on this claim.

## B.  Retaliation

Plaintiffs allege that they have also been subject to retaliation for filing this suit.  To sustain a claim of retaliation, plaintiffs must product evidence on three points: (1) they engaged in protected conduct under Title VII; (2) they experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action.  White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000); Tate v. Dep't of Mental Health, 645 N.E.2d 1159, 1165 (Mass. 1995).  It is clear that the plaintiffs engaged in protected conduct when they filed a lawsuit in good faith alleging, inter alia, discrimination on the basis of sex, in violation of both Title VII and Mass. Gen. Laws ch. 151B, § 4(1).  42 U.S.C. § 2000e-3 (identifying protected conduct to include charging, testifying, assisting or participating "in any manner in an investigation, proceeding, or hearing" under Title VII).  What is unclear is whether the plaintiffs have introduced evidence showing that they were subjected to adverse employment actions or that any adverse actions were causally related to the filing of their complaint.

Plaintiffs point to a whole host of actions which they claim are adverse.  To be adverse, an action must materially change the conditions of plaintiffs' employ. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's

-15-

act or omission does not elevate that act or omission to the level of a materially adverse employment action."); MacCormack v. Boston Edison Co., 672 N.E.2d 1, 7 (Mass. 1996) (indicating plaintiff must demonstrate "a change in working conditions that materially disadvantaged him" to demonstrate an adverse employment action). Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Hernández-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). Here, plaintiffs complain about a variety of changes in the office including: (1) loss of supervisory authority; (2) exclusion from office meetings; and (3) diminished communication regarding office matters. Certainly, if an employee suddenly finds herself with dramatically decreased supervisory authority and without a voice in major decisions, this could constitute an adverse employment action. Cf. Marrero v. Goya of P.R., 304 F.3d 7, 23-24 (1st Cir. 2002) (noting that a monetary impact is not necessary for an action to be materially adverse so long as the action is "equally adverse").

Interpreted in favor of plaintiffs, the record supports the conclusion that plaintiffs lost some of their supervisory authority because the absolute number of their respective subordinates decreased. However, this change occurred as a result of a general restructuring of ORE, which included a new Director,

-16-

new Deputy Director, and a shift in focus from research to crime analysis/GIS for the ORE. Cf. Hernández-Torres, 158 F.3d at 47 (holding that the imposition of additional responsibilities on plaintiff did not constitute an adverse employment action when other employees, not engaged in the protected activity, had similar demands placed on them). During that restructuring, neither of the plaintiffs saw a significant change in her overall job responsibilities. Gu continued to be responsible for research projects. Santoro maintained her position as a Senior Crime Analyst. While Santoro did lose some responsibility because of the promotion of others, her essential job remained unchanged. When a general reorganization results in some reduction in job responsibilities without an accompanying decrease in salary, or grade, those changes cannot be dubbed adverse employment actions. MacCormack, 672 N.E.2d at 8. Finally, plaintiffs make bald assertions that they were excluded from important meetings and experienced diminished communication regarding office matters, but they were unable to name a particular meeting or important decision from which they were excluded. Such unsupported assertions are insufficient evidence of a material change in working conditions.

While it is clear that ORE changed, the plaintiffs cannot establish that these changes were material adverse actions against plaintiffs because of their filing of a sex discrimination claim.

Therefore, the district court correctly granted summary judgment on plaintiffs' retaliation claim.

## C. Equal pay

Plaintiffs claim that defendants violated both the Federal and Massachusetts equal pay acts by paying them less than their male co-workers, Walters and Cox, for substantially equal and comparable work.

The Federal Equal Pay Act ("FEPA") prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a prima facie case for discrimination under FEPA, a plaintiff must establish "that the employer paid different wages to a member of the opposite sex for substantially equal work." Rodríguez v. Smithkline Beecham, 224 F.3d 1, 6 (1st Cir. 2000). To rebut the prima facie case, an employer has several affirmative defenses under FEPA, including that the discrepancy resulted from a pay system based on: (1) seniority; (2) merit; (3) quantity or quality of production; or (4) another differential based on a factor other than sex. 29 U.S.C. § 206(d)(1); Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995).

The Massachusetts Equal Pay Act ("MEPA") prohibits different compensation for individuals who perform "comparable"

-18-

work, unless such a difference is based on seniority; MEPA does not include the other affirmative defenses found in FEPA. Mass. Gen. L. ch. 149, § 105A. The Supreme Judicial Court of Massachusetts has indicated that the MEPA standard is not the same as the FEPA standard. Jancey v. Sch. Comm. of Everett, 658 N.E.2d 162, 166-67 (Mass. 1995) (indicating that MEPA and FEPA differ "significantly" and Massachusetts does not "follow slavishly the Federal approach"). Under MEPA, there is a two-step analysis for determining what constitutes comparable work. Id. at 167-68. First, the factfinder "must determine whether the substantive content of the jobs is comparable, that is, whether the duties of the jobs have 'important common characteristics.'" Id. at 167 (quoting Bureau of Labor & Indus. v. Roseburg, 706 P.2d 956, 959 n.2 (Or. Ct. App. 1985)). If the factfinder determines that the jobs are comparable in terms of their substantive content, then the second question becomes "whether the two positions entail comparable skill, effort, responsibility, and working conditions." Jancey, 658 N.E.2d at 168. Only if both inquiries are answered in the affirmative will the employer be required to pay the employees equally under MEPA. Id.

Both MEPA and FEPA require a consideration of the skills, efforts, and responsibilities involved as well as of working

-19-

conditions.[5]  We  first consider both Gu and Santoro as compared to Walter, and then we compare Santoro and Cox.

**Gu and Santoro compared to Walter**

Gu and Santoro argue that their jobs, classed at MM-6 step 7 and MM-6 step 4 respectively, were substantially equal to Walter's job, classed at MM-8 step 9.  In order to determine whether the plaintiffs can establish a prima facie case under FEPA and MEPA, we must focus on the "responsibilities and functions of [each] position" rather than relying solely on the job titles. Rodríguez, 224 F.3d at 7.  Taking the facts in the light most favorable to the plaintiffs, we will endeavor to compare the responsibilities and functions of Gu and Santoro with those of Walter.

Gu's job responsibilities include "initiating, developing, and conducting research projects," "representing the ORE at meetings related to research projects," purchasing, and negotiating contracts.  Santoro conducts "extensive crime analysis using GIS technology" and both presents such information at the Department's Crime Analysis meetings and keeps the members of the Command staff apprized of crime trends and clusters.  Santoro also helps "develop the Department's automated crime analysis functions" and "crime mapping capabilities within the ORE."  Walter negotiates

---

[5]  Here, only the skills, effort and responsibilities involved are at issue because all employees work in the ORE and thus have the same working conditions.

software purchases, integrates the Projects Tracking Database, and attends Command Staff meetings.  He also testifies "as an expert witness in mapping and measuring distances."  From these job descriptions and the more extensive duties listed in the record, we can conclude that Walter's job differed from those of Gu and Santoro in at least one significant way.  In particular, Walter had the Department's imprimatur as a GIS expert and his job entailed testifying in that capacity.  Gu and Santoro did not have similar responsibilities.

It is obvious from the record that Gu and Santoro do not have the same managerial responsibilities as Walter.  While Gu and Santoro each have some managerial tasks relating to their particular team, neither has responsibilities on an ORE-wide level, as Walter does.  Walter oversees overtime usage and monitors vacation requests for the entire ORE, not just a specific subpart as is the case with Gu and Santoro.  Further, Walter trains and supervises crime analysts, including Santoro.  Given these differences in job responsibilities, we hold that plaintiffs cannot establish they performed "substantially similar work" as required by FEPA or "comparable work" as required by MEPA.

**Santoro compared to Cox**

Santoro argues her work was similar to that of Jeremy Cox, who was five pay steps above her on the MM-6 level.  While Santoro and Cox share the title of Senior Crime Analysts, Cox has

several additional responsibilities, including: (1) continuing "to develop and enhance the Department's Intranet GIS," a project he began while working in another unit in the Department; (2) managing the ORE databases; and (3) training other employees in database management. Plaintiffs claim that Santoro "performed numerous duties" that Cox did not, but do not point specifically to any such duties. Unsubstantiated and conclusory arguments regarding the differences in their jobs do not suffice to meet the plaintiffs' burden of establishing a prima facie case under FEPA or MEPA. Indeed, the record demonstrates that Cox had significantly different duties than Santoro, some of which required highly technical knowledge of GIS. Consequently, the evidence adduced by the plaintiff on this point does not suffice to raise an issue of material fact.

We need not reach the issue of affirmative defenses because no prima facie case of pay discrimination has been established under either statute with regard to either Walter or Cox. The District Court correctly granted defendants' motion for summary judgment on all alleged equal pay violations.

## IV.

For the reasons discussed above, we affirm summary judgment on all counts.

**Affirmed**.