Bennett v. Potter                         CV-03-063-JD  03/11/04
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Brenda D. Bennett

     v.                                 Civil No. 03-063-JD
                                        Opinion No. 2004 DNH 044
John E. Potter,
Postmaster General


                         O R D E R


     Brenda D. Bennett brings a claim of gender discrimination

pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-16, and New Hampshire Revised Statutes

Annotated ("RSA") § 354-A:10, against the Postmaster General

of the United States.[1]  Her claim arose from events during her

employment by the United States Postal Service ("USPS").  The

Postmaster General moves for summary judgment on the grounds

that Bennett cannot prove that she suffered discrimination

based on her gender or that any harassment or hostility was

sufficiently severe and pervasive to constitute a hostile work

environment.  The Postmaster General also asserts that RSA

354-A:10 does not apply to the circumstances of this case.

Bennett objects to the motion as to Title VII but does not

address her claim under RSA 354-A:10.

_____

     [1]Bennett's other claims were previously dismissed.

## Background

"All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party." LR 7.2(b)(2). Because Bennett failed to include a statement of facts in her objection to the Postmaster General's motion, which does include a statement of facts, all properly supported facts in his motion and memorandum will be deemed to be admitted by Bennett. See, e.g., Cosme-Rosado v. Serrano-Rodriguez, ___ F.3d ___, 2004 WL 383357 (1st Cir. Mar. 2, 2004) (publication pages unavailable).

Brenda Bennett began working for the USPS in August of 1988 as a Rural Carrier Associate, in Derry, New Hampshire. In 1991, she was promoted to the position of full-time rural carrier, assigned to Route 14 in Derry. Bennett's claims are based on events beginning in 1998.

In September of 1998, the Derry office posted a job opening for a full-time carrier for Rural Route 3. Don Johnson, who was a Rural Carrier Associate, was awarded the route in early October. Soon after, Bennett told Postmaster John Swiniarski that she did not think it was fair that Johnson was awarded the route because she believed he had lost

his driver's licence on a drunk driving charge. She also told Swiniarski that she intended to get the union involved. Swiniarski told Bennett that it was none of her business.

Monday, October 12, 1998, was Columbus Day, and because it was a federal holiday, there was no mail delivery. Anticipating a high volume of mail to be processed on Tuesday, October 13, Bennett asked her supervisor, Bruce Olson, on Saturday, October 10, if she could come into work on Monday. Olson denied the request because he had others coming in to help with the sorting. Bennett went into work on Monday anyway and found that no mail had been sorted on her route or on three or four other routes. She left a note for Swiniarski, letting him know what had happened.

When she arrived at work on Tuesday morning, Bennett claims she found twice as much mail as she would be able to deliver. She asked one of her supervisors if she could get help with her mail. The supervisor said that help would be provided if someone became available. She was told to do all of the first and second class mail for delivery that day but that she could withhold the third class mail if necessary. She put stickers on six buckets of mail that she did not deliver on Tuesday. On Wednesday, October 14, she processed the new mail but did not go back to the six buckets of mail

3

left from Tuesday.

At noon on Thursday, October 15, Swiniarski, along with Supervisors Patricia Doyle and Brian Casey, confronted Bennett about the six buckets of leftover mail at her work station. Swiniarski accused her of holding back first and second class mail. Bennett said she did not know what was in the buckets of mail and that she was waiting for help to process that mail. Bennett felt intimidated and singled out for criticism.

On Friday, October 16, Doyle and Casey asked Bennett to give them her side of the story. When she asked what the worst outcome might be, they told her that she could be fired for withholding first and second class mail. Bennett contacted Ann Travers at the Personnel Office to set up an intervention with Swiniarski. On October 27, Travers notified Bennett that she had not heard from Swiniarski about scheduling an intervention and asked Bennett how she wanted to proceed. Bennett said she did not need to do anything and dropped it.

Bennett was called into a meeting with her union representative, Olson, and Swiniarski on October 30. She was given written notice that she was being terminated effective December 5, 1998. She then left the office on sick leave and did not return to work. The union initiated a grievance

4

proceeding on her behalf, and on February 6, 1999, Bennett received a letter notifying her that the USPS has rescinded her termination and reduced her discipline to a letter of warning. The same day, Bennett submitted her resignation from the USPS, effective as of February 1, 1999. She pursued administrative proceedings before bringing suit.

## Discussion

Bennett's remaining claim is that she was forced to work in a hostile environment and was subjected to harassment based on her gender in violation of Title VII and RSA 354-A:10. The Postmaster General moves for summary judgment on the Title VII claim on the grounds that there is no evidence that Bennett was subjected to a hostile environment or harassment based on her gender and that any harassment or hostility she experienced was not sufficiently pervasive or severe to be actionable. With respect to the claim under RSA 354-A:10, the Postmaster General points out that the statute is inapplicable to the circumstances of this case and that any claim that Bennett might have intended under other provisions of RSA 354-A is preempted by § 2000e-16.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

A.  Title VII

"Title VII is neither a civility code nor a general anti-harassment code. Title VII requires, rather, that the level of incivility or harassment must amount to either a tangible or a constructive employment action. Furthermore, the alleged harassment and the employment action must be causally related. The discrimination must be based on gender or some other prohibited category." Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003). As the Postmaster General points out, there is no evidence that the

6

events of which Bennett complains were in any way related to her gender.

1. <u>Wrongful termination.</u>

To the extent Bennett claims that her employment was terminated in violation of Title VII, the summary judgment record does not support such a claim. "Generally, a plaintiff establishes a prima facie case by showing that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the job; (3) the employer took an adverse employment action against [her]; and (4) the position remained open or was filled by a person with similar qualifications." <u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 212-13 (1st Cir. 2003) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for the action. <u>Gu v. Boston Police Dep't</u>, 312 F.3d 6, 11 (1st Cir. 2002). The plaintiff bears the ultimate burden of establishing intentional discrimination against her. <u>Id.</u>

Bennett has not addressed who was hired to fill her position after she was fired, and therefore, has not established a prima facie case. Even if that factor were satisfied, however, the Postmaster General has provided a

7

legitimate reason for terminating Bennett's employment which is that she deliberately failed to sort and deliver the mail in the six buckets left after Columbus Day. That conduct, the Postmaster General asserts without contradiction, was insubordination and an "outright subversion of the fundamental mission of her employer." Nothing in the summary judgment record suggests that Bennett was terminated instead because of her gender.[2]

2. Hostile environment.

In her response to the Postmaster General's motion, Bennett contends that her treatment at work during the fall of 1998 amounted to harassment and a hostile work environment based on her gender.

> To prove a claim of hostile work environment sexual harassment, a plaintiff must establish: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile

---

[2]That the sanction against Bennett was later reduced from termination to a letter of reprimand following a union grievance procedure does nothing to show that she was terminated based on her gender.

8

> or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).  In particular, Bennett contends that she was subjected to disparate treatment based on her gender when Swiniarski criticized her, rules were applied more harshly to her, she was given poor performance appraisals and increased workloads, she was not given support during heavy workloads, she had to rely on employees who had retaliated against her for filing a complaint against them, and her mail was not sorted after the Columbus Day holiday.[3]

Hostility and harassment, even when it is severe, is insufficient to support a Title VII claim unless the treatment is discriminatory.  See, e.g., Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999).  Bennett offers no evidence of any kind that she was treated differently than

---

[3]Although Bennett recites this list of alleged mistreatment and adds her own view that she was treated differently than male employees, she offers no evidence of disparate treatment.  As the party with the burden of proof, Bennett cannot rely on speculation or conjecture and must present "more than a mere scintilla of evidence in her favor." Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001).

male employees or that she was harassed or treated with hostility because she is a woman. Instead, based on the summary judgment record, it appears that to the extent she was treated any differently than her fellow employees, that difference was due to animosity arising from her complaint against Don Johnson, which was not based on her gender, and because she did not perform her job as her supervisors expected her and all other employees to do.

Therefore, based on the summary judgment record, Bennett cannot prove her Title VII claim, and the Postmaster General is entitled to summary judgment.[4]

## B. RSA 354-A:10

The Postmaster General correctly asserts in his motion that RSA 354-A:10 proscribes discriminatory practices in leasing and selling residential and commercial property, which has no application to the circumstances of this case. It appears that Bennett's counsel failed to read the statute that

---

[4]The Postmaster General also contends that the events in September and October of 1998 were not sufficiently severe or pervasive to constitute a hostile work environment. See, e.g., Lee-Crispo, 354 F.3d at 44. While that may also be true, because there is no evidence that Bennett's experiences were related to her gender, it is unnecessary to consider the viability of her claim on other grounds.

10

she cites in the complaint filed on behalf of Bennett.  In addition, Bennett did not address the claim in her objection to summary judgment.  As Bennett has not alleged a cause of action under RSA 354-A:10, the Postmaster General is entitled to summary judgment on that claim.[5]


## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 10) is granted.  The clerk of court shall enter judgment in accord with this order and the court's order of May 23, 2003 (document no. 7) and close the case.

SO ORDERED.

                                        _____
                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

March 11, 2004

cc:  Mary Notaris, Esquire
      T. David Plourde, Esquire

---

[5]The Postmaster General alternatively argues that if Bennett intended to allege a claim under RSA 354-A:6 and :7, which address discrimination in employment, such a claim would be preempted by § 2000e-16.  The court declines to construe Bennett's complaint to state a claim that is not alleged.