**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 06-1046

AMELIA DE JESÚS,
Plaintiff, Appellant,

v.

JOHN E. POTTER, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Circuit Judge,
Baldock[*], Senior Circuit Judge,
and Howard, Circuit Judge.

Nora Vargas-Acosta, with whom Adalina De Jesús-Morales
and De Jesús, Hey & Vargas was on brief, for appellant.
David G. Karro, Attorney, United States Postal Service,
with whom Isabel Muñoz-Acosta, Assistant United States
Attorney, Rosa Emilia Rodríguez-Vélez, United States
Attorney, and Miguel A. Fernández, Assistant United States
Attorney, Chief, Civil Division, was on brief, for appellee.

December 27, 2006

[*]  Of the Tenth Circuit, sitting by designation.

**Baldock**, <u>**Senior Circuit Judge**</u>.  Plaintiff Amelia de Jesús sued her employer Defendant John E. Potter, in his official capacity as Postmaster General of the United States of America, for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  The district court granted summary judgment in favor of Defendant and Plaintiff appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  For the reasons that follow we affirm in part, vacate in part, and remand for further consideration.

I.

On an appeal from the grant of summary judgment, we view the facts in the light most favorable to the nonmoving party.  <u>See</u> <u>Feeney</u> v. <u>Correctional Medical Services, Inc.</u>, 464 F.3d 158, 161 (1st Cir. 2006).  We recite the facts as found by the district court and supported by the record adding a few undisputed details gleaned from the record.

Plaintiff is a Hispanic woman, born in New York to Puerto Rican parents.  Plaintiff has been a United States Postal Service employee from May 1981 through the present date.  During the time relevant to this case, Plaintiff worked at the Postal Service Air Mail Facility in Carolina, Puerto Rico (the Caribbean Branch), as Transportation Contracts Manager of the Caribbean district.  Since 2000,

Plaintiff's position has been classified as EAS Level 25.[1] The Caribbean Branch office is part of the New York Metro Area Distribution Networks Office ("NY Metro DNO"). NY Metro DNO is divided into two sectors: Networks functions and Transportation Contracts functions. Plaintiff reports to Postal Service Headquarters in Washington D.C. and also to her supervisor, Stuart Gossoff, at the NY Metro DNO, who among other things, is responsible for overseeing the Networks and Transportation Contracts functions of the NY Metro DNO. Plaintiff is the only female manager out of twelve DNO managers nationwide. She is one of three managers in the NY Metro DNO.

In her capacity as Transportation Contracts Manager of the Caribbean district, Plaintiff is officially responsible for Transportation Contracts functions work. In addition, because she is physically present in the Caribbean Branch office, she has been responsible for day-to-day management of the Networks function for the Caribbean district. She has two counterparts in the NY Metro DNO: Mark Stein, who works on Networks and is officially the Networks supervisor for the Caribbean district, and Héctor Martínez, who works on Transportation Contracts.

---

[1] EAS refers to the Executive and Administrative System of pay and grade. The higher the EAS level, the higher the pay range and grade.

In April 2003, the Postal Service instituted a nationwide Area Office Distribution Networks Realignment Program. The realignment only affected the Networks functions of the DNOs.[2] The realignment created four new positions of Senior Networks Operations Analyst EAS Level 23, and fourteen Senior Networks Operations Analyst EAS Level 21 to be allocated to the NY Metro DNO. Stein was in charge of selecting employees to fill these positions. Stein instructed Networks functions employees ranked lower than EAS 21 to apply for the new positions. The Caribbean Branch office had two such employees: Jorge Antongiorgi and Felix Torres.

Plaintiff learned Stein announced at a meeting that none of the EAS Level 21 or 23 positions would be assigned to the Caribbean Branch office.[3] Plaintiff contacted Gossoff to express her discontent. Plaintiff complained about being excluded from participating in the decision concerning the distribution of the newly created positions as well as the selection of employees to fill those positions. Plaintiff

[2] The realignment plan left unaffected staffing conditions on the Contracts functions.

[3] Antongiorgi applied and was granted an interview for a EAS 21 position. During the interview, Stein asked Antongiorgi whether if selected for the position he would be willing to relocate to New York. Antongiorgi expressed an unwillingness to relocate and, consequently, was not offered the position.

also expressed her disagreement with the decision not to assign any of the new positions to the Caribbean Branch office. Plaintiff told Gossoff she believed the actions were discriminatory. Gossoff informed Plaintiff that the nature of the Caribbean district operations, including the volume of mail distributed in the Caribbean and the type of Networks Transportation, did not warrant any EAS Level 21 or 23 positions when comparing those factors with New York operations. Contemporaneously, Plaintiff complained to Gossoff about allegedly derogatory statements he had made and that other managers had made in his presence concerning members of the Caribbean Branch office.

According to Plaintiff, prior to the April 2003 realignment, Plaintiff supervised three employees: Torres, an EAS Level 19 Networks Specialist; Antongiorgi, who was also an EAS Level 19 Networks Specialist but did some Contracts work; and Concepción González, an EAS Level 19 Contracts Specialists. It is undisputed the Senior Networks Operation Analyst EAS Level 23 positions were created so that the EAS Level 25 area networks office managers would not have to directly oversee EAS Level 21 and EAS Level 19 employees on a day-to-day basis. After the realignment Torres and Antongiorgi were assigned to report to Danny Farino, an EAS Level 23 Senior Networks Analyst in the New

-5-

York Metro DNO. Nevertheless, Plaintiff's day-to-day duties and responsibilities over these Networks function employees were left unaffected. Even though on paper the two employees were under Farino's supervision, according to Plaintiff, they still reported to her. Following the implementations of the realignment, however, Torres retired. At Plaintiff's request, Torres's position was converted into a Contracts position now occupied by Noemí Carrión. Carrión and González work directly under Plaintiff's supervision.

After exhausting all her administrative remedies, Plaintiff brought this action claiming Defendant discriminated against her on account of her sex and national origin in violation of Title VII by (1) excluding her from an important managerial decision, (2) removing members of her staff from under her supervision, (3) failing to assign newly created positions to the Caribbean Branch Office, and (4) making and tolerating derogatory comments alluding to her national origin. Plaintiff also claimed Defendant retaliated against her after she complained of discrimination by ceasing to communicate directly with her. Following the conclusion of discovery, Defendant moved for summary judgment. The district court granted summary judgment to Defendant on all claims concluding Plaintiff did not suffer an adverse employment action.

II.

We review the district court order granting summary judgment de novo. See Thore v. Howe, 466 F.3d 173, 178 (1st Cir. 2006). The purpose of summary judgment is to pierce the pleadings and assess the proof to determine if there is a genuine need for trial. Thus, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To overcome summary judgment, the nonmoving party must rebut such a showing by presenting sufficient evidence from which a jury could reasonably find in its favor. Davric Maine Corp. v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000).

A.

Title VII makes it unlawful for a federal employer to discriminate against an employee on the basis of the employee's "sex, or national origin." 42 U.S.C. § 2000e-16(a). Absent direct evidence of discrimination, an employee may proceed to prove her case using the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this well-known analytical framework, an employee has the initial burden of

coming forward with sufficient evidence to establish a prima facie case of discrimination. To do so, an employee must show, among other things, she suffered an adverse employment action. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) (sex discrimination); Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (national origin discrimination). Generally, an adverse employment action involves a discrete change in the terms and conditions of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); accord Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) ("To be adverse, an action must materially change the conditions of plaintiffs' employ."). A materially adverse change in the terms and conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Marrero v. Goya of P.R., 304 F.3d 7, 23 (1st Cir. 2002).

Plaintiff argues she suffered the following adverse employment actions: (1) Defendant excluded her from a major managerial decision, (2) Defendant removed two employees from under her supervision, and (3) Defendant failed to

assign any EAS Level 21 and 23 positions to the Caribbean Branch office. After reviewing the record before us, we agree Plaintiff did not suffer an adverse employment action. Plaintiff presented no evidence the allegedly adverse employment actions materially changed the terms and conditions of her employment.

Plaintiff's exclusion from one managerial decision is insufficient to constitute a material change in the terms and conditions of her employment. See Gu, 312 F.3d at 14; see also Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 169 (3d Cir. 2001) (concluding exclusion from committees, hiring decisions, a single staff meeting, and a single supervisor seminar insufficiently severe to alter conditions of employments so as to make employment unbearable). As we noted elsewhere, "if an employee finds herself . . . without a voice in major *decisions*, this could constitute an adverse employment action." Gu, 312 F.3d at 14 (emphasis added). Plaintiff, however, presented no evidence she was subsequently excluded from other managerial decisions. More importantly, Plaintiff presented no evidence the terms and conditions of her employment included a right to participate in the decision. The record reflects that at all times relevant to this case Stein was officially the Networks functions supervisor of the Caribbean district and, as such,

responsible for the Networks employees in the NY Metro DNO. While Plaintiff's physical presence in Puerto Rico allowed her to exert some supervisory authority over Networks functions employees in the Caribbean Branch office, the realignment of the Networks functions of the NY Metro DNO (including the Caribbean district) involved matters beyond day-to-day management that fell outside the purview of Plaintiff's duties and responsibilities.

Plaintiff also did not suffer an adverse employment action as a result of Farino's new supervisory role over Antongiorgi and Torres. Plaintiff alleges she lost direct supervisory authority over these employees as a result of the realignment, but as explained, Stein, not Plaintiff, was the official supervisor of the Networks employees in the Caribbean Branch. It is undisputed that while Farino became Antongiorgi and Torres's official supervisor, Plaintiff maintained her day-to-day supervisory role over these employees after the realignment took effect. Therefore, the status quo remained unaffected. See id. (noting that only a dramatic decrease in supervisory authority may constitute an adverse employment action). Moreover, shortly after the realignment, Torres retired and at Plaintiff's request his position was converted into a Contracts position, which Carrión currently occupies. Thus, as things currently stand

-10-

Plaintiff officially supervises two Contracts employees, one more employee under her official supervision than she did prior to the realignment.

Plaintiff also argued she suffered an adverse employment action as a result of Defendant's failure to assign the higher level position to the Caribbean Branch office because according to Plaintiff, "the number of employees assigned to supervise are criteria considered in qualifying candidates for promotions[.]" Title VII, however, does not guarantee a promotion. "Congress did not intend by Title VII, however, to guarantee a job [or a promotion] to every person regardless of qualifications. In short, the Act does not command that any person be hired [or promoted] simply because he was formerly the subject of discrimination, or because he is a member of a minority group." McDonnell-Douglas Corp., 411 U.S. at 800-01. Moreover, Plaintiff presented no evidence Defendant's failure to assign the newly created positions to the Caribbean Branch office diminished her chances to be promoted. See Serna v. City of San Antonio, 244 F.3d 479, (5th Cir. 2001) (finding no adverse employment action where the plaintiff presented no objective evidence his chances for promotion were reduced by employer's act). To prevail on summary judgment the nonmoving party must do more than

-11-

rest upon merely "conclusory allegations, improbable inferences, and unsupported speculations." <u>Quiñones</u> v. <u>Buick</u>, 436 F.3d 284, 289 (1st Cir. 2006).

After the realignment was implemented, Plaintiff was still employed as Transportation Contracts Manager of the Caribbean district, her EAS ranking and pay were unaffected, and her supervisory authority and day-to-day managerial duties and responsibilities remained the same. Therefore, the district court did not err in granting summary judgment to Defendant on Plaintiff's Title VII claim of discrimination.[4]

---

[4]    In addition to Plaintiff's disparate treatment claim, Plaintiff also brought a disparate impact claim alleging Defendant's practice as it relates to excluding the Caribbean Branch from being assigned EAS Level 21 and 23 positions constitutes national origin discrimination. According to Plaintiff, Stein's decision to exclude "Puerto Rico from higher grade levels, has an adverse impact on all the employees of the Caribbean Branch . . . in terms of their professional advancements and development[,]" and on Plaintiff in terms of "her career development[.]"
    Plaintiff's disparate impact claim fails for two reasons. As discussed, Plaintiff presented no evidence she was not promoted as a result of Defendant's decision not to assign the newly created positions to the Caribbean Branch. Plaintiff's claim also fails insofar as she attempts to step into the shoes of the Caribbean employees who were allegedly discriminated against as a result of Defendant's act. Plaintiff lacks standing to bring a claim on behalf of the Caribbean employees allegedly affected by Defendant's act. To have standing, a plaintiff must allege some personal injury fairly traceable to the defendant's allegedly unlawful conduct, which she has not done here. <u>See Baena</u> v. <u>KPMG LLP</u>, 453 F.3d 1, 4 (1st Cir. 2006) (citing <u>Valley Forge Christian Coll.</u> v. <u>Americans United for Separation of Church</u>
(continued...)

-12-

B.

As part of her claim of discrimination, Plaintiff also alleged she suffered an adverse employment action when Gossoff made derogatory comments and tolerated other employees who made derogatory comments alluding to Plaintiff's national origin. The district court correctly recognized that traditionally these allegations are put forward as a hostile work environment claim. Discrimination based on sex or national origin that creates a hostile work environment violates Title VII. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Plaintiff makes the following allegations of derogatory language: (1) Gossoff once referred to the Caribbean Branch employees as "you people," (2) Stein once stated in reference to mail coming from Puerto Rico as mail "coming off of the banana boat," and (3) a NY Metro employee once stated the employees in Puerto Rico were like blind musicians Ray Charles and José Feliciano.

Assuming discriminatory animus toward Puerto Ricans was the motivation for these comments, they are insufficient, as a matter of law, to create a hostile work environment. "[S]imple teasing, offhand comments, and

---

⁴ (...continued)
and State, Inc., 454 U.S. 464, 472 (1982)). Therefore, Plaintiff cannot prevail on her disparate impact claim.

-13-

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). A working environment must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the terms and conditions of victim's employment" to be actionable under Title VII. Id. at 21. Therefore, the district court did not err in finding the alleged derogatory remarks could not establish a hostile work environment.

C.

Plaintiff also brought a claim under Title VII for retaliation alleging that after she complained to Gossoff, he stopped communicating directly with her. According to Plaintiff, Gossoff began communicating with Plaintiff through employees ranked lower than her. The district court found Plaintiff's alleged retaliatory act did not rise to the level of an adverse employment action. While this appeal was pending, however, the Supreme Court decided Burlington N. & Santa Fe Ry. Co. v. White, 548 __ U.S. __, 126 S. Ct. 2405 (2006), changing the legal standard to be applied to claims of retaliation brought under Title VII. We express no opinion as to how this issue should be resolved. We think it proper to allow the district court to

first address this issue in light of <u>Burlington</u>. Accordingly, we remand to the district court Plaintiff's Title VII retaliation claim.[5]

**Affirmed in Part, Vacated in Part, and Remanded in Part.**

---

[5] Plaintiff also argues the alleged acts of discrimination discussed above are also acts of retaliation because in 1997 she engaged in protected activity by filing a complaint of discrimination against the Postal Service. We find Plaintiff's argument unpersuasive. All the alleged acts of discrimination occurred in 2003. Plaintiff presented no evidence of a casual connection between the adverse employment actions in 2003 and the protected activity in 1997, nor can we reasonably infer any such evidence. <u>See</u>, <u>e.g.</u>, <u>Centro Medico del Turabo, Inc.</u> v. <u>Feliciano de Melecio</u>, 406 F.3d 1, 11 n.5 (1st Cir. 2005) (citing cases holding too much time between protected activity and retaliatory act undermines argument of a causal connection).